## BANKS LAW PUB. CO. v. LAWYERS' CO-OPERATIVE PUB. CO.

### (Circuit Court of Appeals, Second Circuit. March 16, 1909.)

### No. 183.

COPYRIGHTS (§ 15*) — EXTENT OF RIGHTS ACQUIRED—OFFICIAL REPORTS OF SU-PREME COURT.

Conceding the right of the official reporter of the Supreme Court of the United States to secure a copyright on his work in the volumes of published Reports, the mere arrangement of reported cases in sequence, and their paging and distribution into volumes, are not features of such importance as to entitle him to copyright protection of such details.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 12; Dec. Dig. § 15.*

Matter subject to copyright, see note to Cleland v. Thayer, 58 C. C. A. 273.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

The following is the opinion of the Circuit Court by Hazel, District Judge:

The bill alleges infringement by the defendant of the rights and privileges of the complainant under copyright laws of the United States. The material facts are not disputed by the defendant. The complainant and defendant are publishers of Reports of the decisions of the Supreme Court of the United States, the former being engaged in printing, publishing, and selling reports of such decisions as compiled, edited, and arranged by the official reporter of the Supreme Court, while the defendant prints, publishes, and sells an edition of such decisions, commonly known as the "L. Ed."—lawyers' edition. The original bill charged the defendant with reproducing the syllabuses of the cases, table of cases, index digest, together with the pagination and order of arrangement of printing the decisions copyrighted by complainant and its predecessors. By stipulation of the parties the bill was amended to include only the charge of infringement arising out of the arrangement of the cases, the division into volumes, the table of cases, and the numerical or star pagination to indicate where in the official reports the different cases and points decided may be found. Proofs were taken under the bill and amended bill, and it is shown that the various official reports herein involved are volumes 156 to 171, inclusive, 173 to 178, inclusive, and 180 to 195, inclusive, which were edited by the official reporter, Hon. J. C. Bancroft Davis, and subsequently by his successor, Hon. Charles H. Butler, and the corresponding publications of the defendant.

The complainant, The Banks Law Publishing Company, is the successor in business of the law book publishers well known to the profession as "Banks & Bros.," and which firm assigned to the complainant various copyrights to the United States Reports. The validity of such assignments is in controversy, and therefore an outline of the source of complainant's title is deemed necessary. At different periods there were two firms or partnerships known as "Banks & Bros.," which for convenience will herein be designated as firm Nos. 1 and 2, respectively. Firm No. 1 had been established many years as law book publishers in New York and Albany, and on July 1, 1897, they were succeeded by firm No. 2. Concededly the earlier firm copyrighted the official editions of the United States Reports from volume 156 down to and including three parts of volume 167, and volumes 167 (fourth part), 168 to 171, inclusive, were separately copyrighted by firm No. 2. All subsequently published United States Reports were separately copyrighted, and after editing by the official reporter, who duly assigned his interest in his origination and copyright for the same, were issued and sold to the public by complainant. On the dissolu-

tion of the firm No. 1, David Banks and Anthony Bleecker Banks, sole partners, entered into a written agreement with firm No. 2, by which among other things they contributed to the capital of the new partnership all stock in trade and "copyrights." Later, on February 9, 1899, the partnership of Banks & Bros. No. 2 was dissolved. The partners executed an agreement of dissolution, and directed a sale of the assets of the company by one Bush, and (quoting from the agreement) "copyrights and all rights, privileges and emoluments of and pertaining to the volumes so sold." Under the agreement to dissolve firm No. 2 an auction sale was had in the presence of the partners, and David Banks purchased the first 171 volumes of the United States Reports. There was no express mention at the sale of the copyrights for the books so struck down to David Banks, but on July 29, 1899, a confirmatory assignment was executed by the latter and by Bush, as trustee, purporting to convey the said volumes or reports to the complainant, "together with all copyrights and rights to copyrights and renewal and renewals thereof." As to the earlier transfer of the copyrights to firm No. 2, as evidenced in the contribution by David Banks and Anthony Bleecker Banks, to the capital stock of firm No. 2, the defendant contends that such act of transfer, although in writing, was not in fact an assignment of the copyrights, but was merely an executory agreement which did not convey the legal title. The defendant claims generally that title to the copyrights never passed to the complainant under the said several assignments, because such instruments did not comply with the requirements of the copyright act.

In my estimation, the transactions between the parties to the conveyances of the copyright as to them amounted to a legal assignment thereof. It is probably true that they were not drawn in precise legal phraseology, nor were they recorded in strict compliance with the provisions of the copyright act, but such recording is thought only necessary to protect subsequent purchasers without notice claiming title from the assignor. The assignors have evidently acquiesced in complainant's ownership, and it appears that royalties have been paid by it. Under such circumstances the presumption is warranted that complainant's predecessors had legal title to the said copyrights, and that for a good consideration they parted with it to the complainant. Belford v. Scribner, 144 U. S. 488, 12 Sup. Ct. 734, 36 L. Ed. 514; Dennison v. Ashdown, 13 T. L. R. 226 Q. B. Div. 1897. In Drone on Copyright, p. 321, it is substantially stated that the ownership of a copyright will pass to another by any writing which clearly expressed the intention of the parties. The hiatus, if any, in the chain of title in relation to the first 171 volumes of the Reports, undoubtedly was cured by the confirmatory instrument (Jacques v. Hall, 3 Gray [Mass.] 194), and evidence of such later assignment was properly received under the supplemental bill.

Coming now to the question of infringement of the copyrights which are the subject of this controversy, and the right of the official reporter of the Supreme Court to secure to himself such copyrights and privileges, it may be helpful to set out the act of Congress passed August 29, 1842 (5 Stat. 545, c. 264), defining the duties of the reporter. The act as amended (Rev. St. § 681 [U. S. Comp. St. 1901, p. 560]) reads as follows:

"Sec. 681. The reporter shall cause the decisions of the Supreme Court made during his office to be printed and published within eight months after they are made; and, within the same time, shall deliver three hundred copies of the volumes of said Reports to the Secretary of the Interior. And he shall, in any year when he is so directed by the court, cause to be printed and published a second volume of said decisions, of which he shall deliver, in like manner and time, three hundred copies."

The amendatory act passed August 5, 1882 (22 Stat. 254, c. 389, § 1 [U. S. Comp. St. 1901, p. 561]), increasing the compensation of the reporter, does not expressly require him to print and publish the volumes of decisions, but requires him to furnish such volumes to the public at the price therein provided and to the Secretary of the Interior without charge. Section 681 was not repealed by the amendment, and, read in connection therewith, it still remains the duty of the reporter to print, publish, and furnish the volumes. According to the defendant, under such amendatory act the reporter cannot have a copyright for any of the work produced by him in his official capacity. It is broadly suggested that such labor is that of a paid employé and accord-

ingly vests in the employer. The official reporter of the Supreme Court, though a sworn public officer, is not, however, confined to this strict rule. There is abundant precedent for holding that a salaried reporter of the court, unless forbidden by statute, may secure copyright of the headnotes, statements of cases, title of the volume, arrangement or grouping of cases, index digest, synopsis of the arguments, and in short, such portions of his compilation or authorship as requires the exercise of intellectual thought and skill. The opinions or decisions of the judges, and the syllabuses if prepared by the court, are not the subject of copyright interest. Neither the court nor the reporter, from motives of public policy, can have any exclusive rights in the written or oral opinions of the court. Banks v. Manchester, 128 U. S. 244, 9 Sup. Ct. 36, 32 L. Ed. 425. The case at bar is analogous to Callaghan v. Myers, 176 U. S. 617, 9 Sup. Ct. 177, 32 L. Ed. 547, where the Supreme Court says:

"Even though a reporter may be a sworn public officer, appointed by the authority of the government which creates the court of which he is made the reporter, and even though he may be paid a fixed salary for his labors, yet, in the absence of any inhibition forbidding him to take a copyright for that which is the lawful subject of copyright in him, or reserving a copyright to the government as the assignee of his work, he is not deprived of the privilege of taking out a copyright, which would otherwise exist. There is, in such case, a tacit assent by the government to his exercising such privilege. The universal practical construction has been that such right exists, unless it is affirmatively forbidden or taken away; and the right has been exercised by numerous reporters, officially appointed, made sworn public officers, and paid a salary under the governments both of states and of the United States." Sweet v. Benning & Lovell, 16 C. B. Rep. 458; Nash v. Lathrop, 142 Mass. 29, 6 N. E. 559.

This unequivocal holding upon this point was not obiter, as claimed by the defendant, although the reporter held office under a state statute. In view of the existence of the federal statute (section 681), which, as stated, is not essentially different from the later enactment, defining the duties of the reporter of the Supreme Court, the Callaghan Case must be regarded as authoritative of this point. It had been held in the federal courts previous to the date of that decision that an official court reporter is entitled to copyright protection for his marginal notes or synopsis of case, statement of cases, abstract of arguments of counsel, and indexes to volumes. See Wheaton v. Peters, 8 Pet. 591, 8 L. Ed. 1055; Gray v. Russell, 1 Story, 11 Fed. Cas. No. 5,728.

The defendant contends that to arrange the cases in sequence, subdividing a volume to indicate to the printer the number of lines on each page, the size or the pagination of the volume as in complainant's edition, was not the exercise of such a degree of skill or intellectual labor as to entitle the reporter, in view of the statute prescribing his duties, to the exclusive protection of the copyright laws. That the defendant had the right to publish and sell the printed decisions and reports of decisions of the Supreme Court, irrespective of such publication by the official reporter, is conceded. Nor does the complainant object to the defendant independently arranging the decisions, paging them in their order, and indexing and supplying table of cases, and binding them into a volume for circulation and sale, either separately or collectively; but it is contended that the defendant has not the legal right to adopt complainant's arrangement of cases, nor to indicate by marginal paging and asterisks where such decisions or points discussed by the court are found in the official publication, and in its table of cases point out where a case is reported in the official publication, and to so divide the volume published by it as to reproduce in one volume four volumes of the official publication. Whether the orderly arrangement of the cases, together with the pagination by the official reporter, as distinguished from his labor in preparing the syllabus, abstract of argument, index, digest, notes, or annotations, is a question not free from difficulty. Complainant contends that the proofs show that the reporter in his arrangement in the printed reports must intelligently familiarize himself with the written opinions of the court to enable him to select the important cases with which to commence a volume, and, so far as possible, to group or assemble in such volume the cases of one justice, and also that he collects and arranges the opinions upon the same subject, so that for conven-

ience they may be printed near together. Upon this point the witness Davis, for the complainant, testifies:

"Q. Now, Mr. Davis, who did the work of arranging the cases? A. I did it.

"Q. In arranging the cases in the order in which they were sent to the printers, did you observe any plan or system? A. Well, I used to look the cases over and determine for myself the order in which I would have them published.

"Q. Did you make that a matter of serious consideration? A. Yes; personal examination in every case.

"Q. Can you state any particulars with reference to which you make your arrangement? A. Largely with reference to what I considered the importance of the cases. Tried to commence a volume with the most important cases that I had; but so far as possible I put together all the cases that I had of one judge—to put all his cases together. That was my wish generally; I didn't always do it.

"Q. Did you observe any other plan than what you have named? A. If there was any argument to be submitted I prepared that—put that into the report of the case where it ought to go.

"Q. Now, I am speaking at present simply in regard to the matter of arrangement, Mr. Davis. In making the arrangement for the printer, which you say was the arrangement followed in the volumes, did you pay any attention to the subject-matter of the cases? A. Yes, I tried to; would try to. But then I cannot say that I did in every case. I tried to get the cases of the same subject as nearly together as I could. Frequently the same argument would apply to two or three cases; not always, however, but frequently.

"Q. Who determined where each bound volume was to end? A. I did. My rule was to terminate it as near the seven hundredth page as I could.

"Q. But as a matter of fact, were you usually able to end it at the seven hundredth page? A. Well, as I remember. I did. It didn't go much over it generally. But the books will show for themselves.

\* \* \* \* \* \* \* \* \* \*

"Q. You made no attempt to divide up the decisions into the parts of the volumes, did you? A. No. I took them as they came. Sometimes there would be a whole part in a week, and other times it would take three or four weeks to get a part. I took them as they came, but I arranged them by subjects so far as possible.

"Q. Do you recall to mind any particular cases that were arranged by subjects? A. No, I cannot now.

\* \* \* \* \* \* \* \* \* \*

"Q. Wasn't it necessary sometimes to take out a case which you had arranged in your manuscript to terminate a volume, and put in a shorter case? A. I don't remember that I ever did it. I may have done it.

"Q. You state that in arranging the cases you put the important cases first. That didn't interfere with the chronological arrangement of the cases, did it? A. No, not necessarily. But I didn't assume to regulate the cases chronologically, except as they appeared as a whole at the end of each week."

It will be observed from this testimony and that of Mr. Morey, the printer, that the plan or system of arranging the cases was not unalterable, and at different times any asserted preconceived plan yielded to the exigencies of the situation. To intelligently prepare the headnotes or syllabuses of the cases, the official reporter manifestly had to become familiar with the opinions of the court and discussion of the points passed upon. Such intelligent labor and skill beyond doubt is correctly classified as being that of an author who by his writings is entitled to the protection of the statute; but concededly it was the duty of the reporter under his appointment to make a report of the decisions of the court, cause them to be printed and published, and constitute them into volumes. A reasonable interpretation of the statute prescribing his duties implies pagination, volumes of uniform size and reasonable thickness, together with a suitable and convenient arrangement of the cases. If the reporter, owing to his familiarity with the decisions, chooses to arrange them in the order of their importance, or so far as possible conveniently group the opinions of each justice instead of in order of time or date of filing, he does so voluntarily and in evident compliance with the proper and faithful discharge of

his official duties. True, the statute prescribing his duties does not point out how the cases shall be arranged into volumes and printed, but to fittingly reproduce the decisions and opinions in volumes it is necessary to supply pagings, together with an orderly arrangement of the cases. It is inconceivable to me that to merely arrange the cases in sequence (though concededly the reporter uses good judgment in so doing) and paging the volumes—things essential to be done to produce the volumes—are features or characteristics of such importance as to entitle him to copyright protection of such details. In my estimation no valid copyright for these elements or details alone can be secured to the official reporter. A different question would be presented if, for instance, infringement of the headnotes, or syllabuses, index digest, synopses of arguments or statements of the cases, or an abridgment thereof were claimed. Upon this proposition the case of Callaghan v. Myers, supra, is instructive. Mr. Justice Blatchford, writing the opinion of the court, quoted with approval from the opinion of Judge Drummond, who heard the case in the Circuit Court, as follows:

"The fact appears to be, and indeed it is not a subject of controversy, that in arranging the order of cases and in the paging of the different volumes the Freeman edition has been followed by the defendants; but, while this is so, I should not feel inclined, merely on that account and independent of other matters, to give a decree to the plaintiff, although it is claimed that the arrangement of the cases and the paging of the volumes are protected by a copyright. Undoubtedly in some cases, where are involved labor, talent, judgment, the classification and disposition of subjects in a book entitle it to a copyright. But the arrangement of law cases and the paging of the book may depend simply on the will of the printer, of the reporter or publisher, or the order in which the cases have been decided, or upon other accidental circumstances. Here the object on the part of the defendants seems to have been that there should not be confusion in the references and examination of cases; but the arrangement of cases and the paging of the volumes is a labor inconsiderable in itself, and I will regard it, not as an independent matter, but in connection with other similarities existing between the two editions, when I say, taking the whole together, the Freeman volumes have been used in editing and publishing the defendants' volumes."

This excerpt conspicuously intimates that, if the elements infringed consisted simply of the arrangement of the cases and the pagination, a different conclusion would have been reached.

No authority is cited which supports the contention that complainant is entitled to be protected in its pagination and arrangement of cases where the substance of the origination is not pirated, and in the absence of such authority I hesitate to hold that the scope of the copyright act protects the reporter in the details of his employment mentioned. The United States Reports in their entirety are not to be viewed as an independent publication, and the reporter's right to protection must be limited to his intellectual labor, which, of course, may include the arrangement of cases and paging in connection with his writings or literary matter, but for another to simply adopt the plan of grouping of the cases, making marginal reference to the paging of the volumes issued under his direction, without in any way pirating the substance of his origination, is not enough, in my judgment, to establish infringement. The trend of some of the decisions and of the text-writers indicates that an arrangement of the material matter of a book may be the subject of a valid copyright; but any principle upon which such cases are based is not thought applicable where the arrangement of the cases, though involving some merit, so obviously was necessary to produce the volumes required by the statute. Such labor, under the circumstances presented, like the decisions and opinions of the court, became the property of the public.

In Howell v. Miller, 91 Fed. 129, 33 C. C. A. 407, it was claimed that the publication of an edition of the statute laws of the state of Michigan was an infringement of a copyright held by the plaintiff, and Mr. Justice Harlan, speaking to the point, says: "If Miller had cut from Howell's books, delivered to him by the state, the General Laws of Michigan as therein printed, and the pages so cut out had been used when his compilation was printed—

if this had been done and nothing more—there would have been no ground of complaint."

Applying this holding to the facts under consideration, an action for infringement does not lie if the defendant's asserted wrongdoing simply consisted of reprinting the decisions of the court with the paging, the defendant independently supplying headnotes, statements of cases, etc.

One other point remains to be considered; that is, has the court power to grant relief to the complainant, irrespective of the question of copyright, on the ground of injury to property rights of a continuing trespass? The jurisdiction of the court arises from the asserted infringement of copyright, and no diversity of citizenship being shown, the court is without jurisdiction, even conceding that the bill alleges a cause of action other than for infringement of copyright.

The bill is dismissed, with costs.

Russell & Winslow (Wm. Hepburn Russell, of counsel), for appellant.

Frederick F. Church (Frank F. Reed and Edward S. Rogers, of counsel), for respondent.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

PER CURIAM. It is not necessary to discuss so much of the opinion below as deals with the questions of assignment and of the right of the official reporter to secure copyrights. We concur with Judge Hazel in his reasoning and conclusion that the arrangement of reported cases in sequence, their paging and distribution into volumes, are not features of such importance as to entitle the reporter to copyright protection of such details.

The decree is affirmed, with costs.