**WEST PUBLISHING CO.**

v.

**MEAD DATA CENTRAL, INC.**

Civ. No. 4–85–931.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 3, 1985.

---

Vance K. Opperman, Diane M. Helland, Joseph R. Kernan, Jr., Opperman & Paquin, Minneapolis, Minn., for plaintiff.

John D. French, Duane W. Krohnke, John F. Beukema, Faegre & Benson, Minneapolis, Minn., for defendant.

## MEMORANDUM ORDER

ROSENBAUM, District Judge.

In this action, plaintiff West Publishing Company (West) alleges copyright infringement by defendant Mead Data Central, Inc. (MDC) on the basis of MDC's proposed introduction of "star pagination" keyed to West's reports in its LEXIS legal research system. West is before the Court seeking a preliminary injunction enjoining this introduction pursuant to Rule 65 of the Federal Rules of Civil Procedure (F.R.Civ.P.). MDC has answered, and moves for dismissal of all counts, alleging plaintiff's failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6), F.R. Civ.P. The Court heard oral argument on September 17, 1985. Based upon the files, briefs, affidavits, arguments of counsel, and all other matter submitted, the Court grants plaintiff's motion for preliminary injunction and denies defendant's motion for dismissal.

*Background*

For all purposes relevant to these motions, West is engaged in the business of collecting, selecting, compiling and reporting the judicial opinions of state and federal courts. West arranges these opinions into a series of books collectively known as the "National Reporter System" publications. Each case report West publishes (West report) is assigned to one of the individual series within the overall National Reporter System. This is done on the basis of court and/or subject matter of the opinion. West reports are further categorized, arranged and assigned to a volume within the series. The volumes and pages are then sequentially numbered to allow detailed reference to West's reports. The exact location of each West report in the overall arrangement of case reports, can be found ("cited") by stating the volume number, series designation, and page number of the report. West represents that upon completion of each volume it registers a copyright claim with the Register of Copyrights and receives a separate Certificate of Registration. (*See,* Affidavit of Arnold O. Ginnow; Affidavit of Darrin Pepper.) Copies of the Certificates of Registration were provided during argument of the

present motion. For purposes of this decision, the validity of the documents are not in question.

■ The Court takes notice of West's success in its field. Judicial decisions are routinely identified by the names of the parties and the West citation, i.e. volume numbers, series designation, and first page of the opinion.

MDC owns and operates LEXIS, a computer-assisted legal research tool containing decisions of state and federal courts (LEXIS reports) in its database. The judicial opinions stored in the LEXIS database note the citations to the first page of the judicial opinions as reported in West's National Reporter System. This is done by displaying at the top of the LEXIS computer screen a West series designation, volume number, and page number on which the opinion begins.

In June of 1985, MDC announced its plan to include "star pagination" within the text of LEXIS reports by October of 1985. MDC's announcement and subsequent advertisements of this new feature indicate that star pagination will consist of "the addition of the official page cites to the full text of online case law material." (See defendant's Exhibit E.) Star pagination was acknowledged at oral argument to be the insertion of numbers from West's National Reporter System publications within the body of LEXIS reports. This will permit the LEXIS user to determine the West page number coinciding with the text of a LEXIS report taken from the LEXIS screen or computer printout, without the physical necessity of referring to the volume of the National Reporter System publication in which the report appears.

West claims that MDC's intended star pagination constitutes an appropriation of West's comprehensive arrangement of case reports in violation of the Copyright Revision Act of 1976, 17 U.S.C. § 101 *et seq.* On this basis, West seeks this preliminary injunction to enjoin MDC's alleged infringement.

*Discussion*

■ The factors to be considered in the decision to grant or deny a preliminary injunction are set forth by the Eighth Circuit in *Dataphase Systems Inc. v. C.L. Systems, Inc.,* 640 F.2d 109 (8th Cir.1981). *Dataphase* mandated an analysis of the probability of the movant's success on the merits; the threat of irreparable harm to the movant if the preliminary injunction is denied; the balance between this harm and the harm the preliminary injunction, if granted, would cause to the other party; and the public interest in granting or denying the preliminary injunction. No one of the above factors determines whether a preliminary injunction should issue. Rather, the equities must be balanced to achieve a just determination. *Id.* at 113, 114.

I. West's probability of success on the merits.

■ West's probability of success on the merits at trial depends on the validity of its copyright infringement claim. West claims that its National Reporter System publications are protected by copyright. At the hearing of its motion West presented certificates of copyright registration for each of its reporter volumes. A copyright registration generally constitutes prima facie evidence of a valid copyright. 17 U.S.C. § 410(c); *Eckes v. Card Prices Update,* 736 F.2d 859, 861 (2nd Cir.1984). Defendant has the burden of overcoming this presumption. *Southwestern Bell T. Co. v. Nationwide Ind. Dir. Serv., Inc.,* 371 F.Supp. 900, 905 (W.D.Ark.1974).

Neither party questions that some parts of West's National Reporter System publications are appropriate subjects for copyright protection. The focus is on which portions of those publications are under the protection of the copyright laws. West claims that its arrangement of cases in its volumes and the page numbers it sets forth can be copyrighted. MDC denies West's claim. The Court finds two cases of particular interest and importance in providing

an analytic framework in which to consider the claims of the parties. They are *Callaghan v. Myers*, 128 U.S. 617, 9 S.Ct. 177, 32 L.Ed. 547 (1888) and *Banks Law Pub. Co. v. Lawyers Co-operative Pub. Co.*, 169 F. 386 (2nd Cir.1909). It is to these two cases that the Court must first turn.

In *Callaghan*, the plaintiff, Meyers, became the owner of several volumes of the reports of the Supreme Court of the State of Illinois. These volumes were prepared by and acquired from the official reporter of the Supreme Court of the State of Illinois. The volumes contained not only the opinions of the Court, but also considerable matter original to the reporter including the title page, table of cases, headnotes, statements of facts, arguments of counsel, indices, etc. The Court held that all the matter in the law reports, excluding the opinions of the Court, were the appropriate subject matter of copyright protection. *Callaghan*, 128 U.S. at 647, 9 S.Ct. at 184.

The Court in *Callaghan* specifically delineated the copyrightable portions of the law reports, saying:

> Such work of the reporter, which may be the lawful subject of copyright, comprehends ... the *order of arrangement of the cases, the division of the reports into volumes, the numbering and paging of the volumes*, the table of cases cited in the opinions, (where such table is made,) and the subdivision of the index into appropriate, condensed titles, involving the distribution of the subjects of the various headnotes, and cross-references, where such exist. (Emphasis added).

*Callaghan*, 128 U.S. at 649, 9 S.Ct. at 185.

■ It is clear the Supreme Court found that under appropriate circumstances pagination and arrangement ascend to a level appropriate for copyright protection. If the arrangement of cases and the paging of the book depend simply on the will of the printer, or the order in which the cases have been decided, or upon other accidental circumstances, they of course are not subject to copyright protection because they

then involve no labor, talent, or judgment. *Callaghan*, 128 U.S. at 661, 662, 9 S.Ct. at 189, 190.

■ West's comprehensive arrangement of cases satisfies the Supreme Court's *Callaghan* test of labor, talent, and judgment. West collects cases from every state and federal court in this country. West does not then simply take any cases it has on hand, put them together in any order, and bind in a hardback volume. They first separate state court decisions from federal court decisions. The state court decisions are further subdivided into regions and placed in a regional reporter appropriate for the case in question. The federal decisions are divided at the district court and appellate court level. District court decisions are further subdivided according to the subject matter of the decision be they bankruptcy, federal rules or other miscellaneous matter. This comprehensive process involves considerable planning, labor, talent, and judgment on West's part.

For its proposition that the arrangement and pagination of West's National Reporter System publications are not appropriate subject matter for copyright protection, MDC relies primarily on *Banks Law Pub. Co. v. Lawyers Co-Operative Pub. Co.*, 169 F. 386 (2nd Cir.1909). In *Banks*, the plaintiff was the successor-in-interest to the official reporter of the United States Supreme Court. He engaged in the business of printing, publishing, and selling the Court's decisions as compiled, edited and arranged by the official reporter. The defendant was in the business of printing, publishing and selling a competing edition of the Supreme Court's decisions. Plaintiff claimed that defendant's edition infringed its copyright since the arrangement of cases in defendant's edition, as well as the division of the decisions into volumes were the same as in plaintiff's books. Plaintiff also claimed that defendant's edition star paginated to plaintiff's official reports. The Court held that the official reporter's arrangement of cases within his volumes

and the subsequent pagination of those volumes were *not* appropriate subjects of copyright protection. *Banks,* 169 F. at 390.

This Court finds that MDC, in relying upon *Banks,* has chosen a fragile bark upon which to sail the rocky shoals of copyright law. While *Banks* is offered for the proposition that "mere" pagination and arrangement do not rise to a dignity sufficient to justify the grant and protection of a copyright, this assertion bears further scrutiny. In *Banks,* the Court dealt with the rights of the assignee of the official reporter, whose statutory duty it was to report the decisions of the Supreme Court. He was required, by law, to organize them into volumes, and have them printed and published. According to the Court, it was the reporter's statutory duty to supply paging for the volumes together with an orderly arrangement of the cases. *Banks,* 169 F. at 389.

■ MDC claims that any distinction between the official or unofficial status of the Court's reporter is trivial. This Court disagrees. The *Banks* Court emphasized the official nature of the reporter's duties and declined to flatly deny copyright protection to pagination and arrangement. "In my estimation, no valid copyright for these elements or details *alone* can be secured to the official reporter. * * * [A]n action for infringement does not lie if the defendant's asserted wrongdoing *simply* consisted of reprinting the decisions of the court with the paging. (Emphasis supplied)." *Banks,* 169 F. at 390, 391. The Court could easily have said, "We hold that copyright protection may not be had for printed arrangement and pagination." Why did it not do so?

The answer lies in the inherent nature of printing when one is mandated to officially record a court's decision. The raw (slip) opinions must be collated and arranged. They then must be placed with a printer whose selection of typeface and page size dictate a certain number of words or lines for each page. Each page must be numbered sequentially. When one is mandated (as an official reporter) to perform these functions, the result is not an exercise of independent judgment or discretion. The arrangement and pagination inhere in the official process and become part of the public domain. For a person who stands in this official position, no copyright protection can be granted for arrangement or pagination.

The holding in *Banks,* then, does not stand for the proposition that arrangement and pagination are not copyrightable per se. Rather, it indicates that when required to do so by law, those labors do not reflect any independent judgment or discretion and as such become part of the public domain. *Banks* does not prohibit West Publishing Company from obtaining a copyright in the pagination or arrangement of its publications. West is not the official reporter for any court in this country nor is it required by statute to arrange or page its volumes. It does these things of its own initiative expending considerable labor, talent, and judgment in the process. West's page numbers and its arrangement of cases are necessarily within the scope of copyright protection.

■ If this were not so, one could not collect Shakespeare's plays—themselves not subject to copyright—into a copyrighted work. *See,* 17 U.S.C. § 103. Someone's version of the bible would be able to be duplicated by another. *See,* 17 U.S.C. § 103. One could photoduplicate them in whole without protection. Why are these works subject to copyright? Because while the base data lies in the public sphere, the arrangement and pagination of this public material reflects the skill, discretion and effort of the person crafting the arrangement.

Lastly, the Court feels it appropriate to indicate its belief that neither the *Callaghan* Court in 1888, nor the *Banks* court in

1909, could possibly have considered the effect of the computer with its nearly infinite information-gathering capability. There now exists a cybernetic technology which will random access the entire body of decisional law in a unified database. While matching arrangement and pagination once may have made one work parallel to another, it now enables one work to be totally ingested into another. These facts beggar a simple one-to-one analogy between one printed format and another. The courts in *Callaghan* and *Banks* could not have realized that the taking of an arrangement or page numbers from a collection of cases would absolutely do away with the underlying work.

Based on the foregoing, this Court finds that *Callaghan* supports and *Banks* does not bar copyright protection for West's laboriously prepared, voluntary arrangement of cases.

Beyond analysis of caselaw, this Court finds further reason to extend copyright protection to West's arrangement and pagination of its law reports: There is an additional contribution by West Publishing Company which goes beyond the simple copyright which exists for their editorial work. The genius of this work is that it is self-indexing.[1] By assembling cases as they have been arranged in sequenced volumes, a case can be indexed by following its name with a volume number, series designation, and page number. In fact, this is the most common method of referencing cases in the field of legal research. By this device, the case of *United States ex rel. Miller v. Twomey*, consisting of several printed pages, and issued on May 16, 1973, by the Seventh Circuit Court of Appeals, is transformed.

■■■ The statement of the mere existence of the case of *United States ex rel. Miller v. Twomey*, standing alone is use-less. It is useless because that decision, as issued, cannot be accessed. Its voice is silent, and its teachings are unheeded. This is so, as long as no person, beyond the Seventh Circuit Court as author, arranges it in accessible form and indexes the case. Interestingly, both parties to the present cause have done so. It is mutually as accessible in both LEXIS and the West publications. For neither party is the decision itself susceptible to copyright, since it is the Law as expounded by the Seventh Circuit Court of Appeals. In LEXIS, the case, in full text, is available by keying in appropriate signals to a computer in the memory of which the decision is held.

Or, you can refer to it as 479 F.2d 701.

What does 479 F.2d 701 mean? It means that the decision is found on the seven-hundred-and-first page of the four-hundred-seventy-ninth volume of the second series of the Federal Reporter, *according to West Publishing Company's arrangement of cases.*

The West Publishing Company's arrangement is a significant work of skill and enterprise which is itself entitled to copyright protection. 17 U.S.C. § 103. That protection has been properly perfected and is of a nature cognizable in this Court.

This set arrangement is either a virtue or a defect depending on how it is viewed. LEXIS holds as one of its strengths in the marketplace, that unlike the West Company's static arrangement, in LEXIS a case's location is variable. Where the case is forever locked in Volume 479 of West's Federal second volumes, in the LEXIS system it is computer accessible at any time. It may be random accessed in any order, preceded and followed by whatever cases the mind and skills of the legal researcher compels. Defendant's Memorandum in Opposition to Plaintiff's Preliminary Injunction Motion, at 13.

---

1. The significance of this indexing function is seen by the fact that another whole enterprise, Shepard's Citations, has been established which indexes West's internal index. This is not unlike the system dealt with in *New York Times Co. v. Roxbury Data Interface, Inc.,* 434 F.Supp. 217 (D.N.J.1977). This has proven to be an invaluable tool for promoting legal research.

LEXIS has long noted at the beginning of each of its cases the "cite" according to the West Publishing Company's arrangement. This West acknowledges as a fair use of its copyrighted material. Plaintiff's Reply Memorandum of Law in Support of Motion for Preliminary Injunction, at 17; 17 U.S.C. § 107. It should be noted, parenthetically, that this is not necessarily altruism on West's part. That cite calls a researcher to West's books—which they are in business to sell as well as create.

■ But this case turns on whether or not the succeeding page numbers themselves are protected by copyright, even if the overall arrangement is a copyrightable entity. This Court holds that they are so protected.

■ In the present case, the text of the decisions is held in both the bound volumes of the West arrangement and the computer memory of the MDC access devices.[2] As such the body of the decisional law in our courts is equally accessible to both parties. But the Court finds that the use of the second and succeeding numbers following the initial citation to West's arrangement, the so-called "jump cite" (i.e. 479 F.2d 701, *702*), infringes on West's copyright. It does so because it goes beyond fair use. Once one has access to the MDC data base, using the LEXIS keyboard, one has the full text of the opinion. Once one has the jump cite, one has access to the copyright-protected overall arrangement as delineated by West Publishing Company.

With immediate access to the jump cite, there is instant access to West's whole arrangement; you never again need to purchase West's books in the marketplace to get each and every aspect of West's copyrighted arrangement of cases. This is the instance when " '... a use that supplants any part of the normal market for a copyrighted work would ordinarily be con-

sidered an infringement.' Senate Report [No. 94–473]," cited in *Harper & Row Publishers v. Nation Enterprises,* —— U.S. ——, 105 S.Ct. 2218, 2235, 85 L.Ed.2d 588 (1985). The computer "owns" West's copyrighted arrangement.

■ MDC argues that West's effort to claim copyright protection for page numbers is an attempt to copyright a numbering system. This argument is a sophistry. MDC urges that the pagination of West's volumes is simply a succession of arabic numbers, in serial order commencing with "1" and continuing through a book. Of course this is so, but the statement is trivial. It is beyond cavil that one cannot copyright the arabic numbering system. 17 U.S.C. § 102. But as is seen above, this is not just a series of numbers each rising by one over its predecessor, it is the basis of the West arrangement—the key to the self-index by which West's arrangement is accessed. This is, the Court finds, what is meant by the words "taken as a whole" in the copyright definition of "compilations". 17 U.S.C. § 101. The sophistry is apparent when one considers that just as one cannot copyright the arabic number, so one cannot copyright the Latin alphabet or the English language. If MDC's argument were to be taken seriously, West's headnotes and case synopses would be susceptible to MDC's computers, too. They are all composed of Latin letters and words in the English language.

West has made an adequate showing, for *Dataphase* purposes, that its National Reporter System publications constitute a copyrightable arrangement of which the numbering and pagination of its volumes are a part. Since West's claim that it has copyrighted these publications is not currently disputed, West has the exclusive right to reproduce and distribute this arrangement. 17 U.S.C. § 106.

■ MDC claims that its star pagination will not infringe West's arrange-

---

**2.** While the parties may, at this early stage of the litigation dispute whether or not the precise words of each decision are exactly the same or vary significantly from West to MDC, for the purposes of this opinion, the texts of the decision are regarded as substantially identical.

**1580**

ment because its random generated arrangement is entirely different from West's arrangement. It argues that star pagination will not bring the arrangements closer together. But for infringement purposes, MDC need not physically arrange it's opinions within its computer bank in order to reproduce West's protected arrangements.[3] "[D]atabases are simply automated compilations—collections of information capable of being retrieved in various forms by an appropriate search program ... [I]t is often senseless to seek in them a specific fixed arrangement of data." *Rand McNally & Co. v. Fleet Management Systems*, 600 F.Supp. 933, 941 (N.D. Ill.1984). This Court finds that MDC will reproduce West's copyrighted arrangements by systematically inserting the pagination of West's reporters into the LEXIS database. LEXIS users will have full computer access to West's copyrighted arrangement.

■ MDC claims that even if its star pagination would otherwise constitute infringement, it is legal fair use under 17 U.S.C. § 107. This provision provides as follows:

> [T]he fair use of a copyrighted work for purposes such as criticism, comment, news reporting, teaching, ... scholarship, or research is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> 1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> 2) the nature of the copyrighted work;
>
> 3) the amount and substantiality of the portion used;
>
> 4) the effect of the use upon the potential market for or value of the copyrighted work.

Upon consideration of the statutory factors, this Court concludes that MDC's intended star pagination does not constitute fair use.

1. Purpose and character of the use.

MDC acknowledges that it hopes to introduce star pagination to enhance its position in the marketplace. In other words, MDC's star pagination is a commercial use intended for profit. The Supreme Court in *Harper & Row Publishers v. Nation Enterprises*, — U.S. —, 105 S.Ct. 2218, 2231, 85 L.Ed.2d 588 (1985) indicated that such a use tends to weigh against a finding of fair use. "[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 451, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984). Therefore, considering MDC's stated purpose of star pagination, it is difficult to find a fair use.

2. Nature of the copyrighted work.

■ Original works are generally accorded a higher degree of fair use protection than that granted to compilations. *Harper & Row Publishers v. Nation Enterprises*, — U.S. —, 105 S.Ct. 2218, 2232, 85 L.Ed.2d 588 (1985). While the fact that the protected work is an arrangement might otherwise mitigate in MDC's favor, fair use claims involving compilations have been rejected. *See, e.g. Schroeder v. William Morrow & Co.*, 566 F.2d 3 (7th Cir. 1977). This is especially true when the purported fair use is commercial. *Financial Information, Inc. v. Moody's Investors*, 751 F.2d 501, 509 (2nd Cir.1984). As acknowledged at argument, star pagination is being introduced to increase MDC's revenues, and enhance its market position. Under this factor, it cannot prevail on its fair use claim.

3. Amount and substantiality of the portion used.

MDC claims that West's page numbers constitute a miniscule portion of the total

---

**3.** In a sense, the whole concept of serial order in a computer memory is meaningless. In LEX-

IS, the "opinions" are actually only recorded, accessible, electronic impulses.

material contained in a given volume of a West reporter. While this may be true, it is not necessarily enlightening. When viewed in the light of MDC's intent and ability to expropriate each and every page number from each and every volume of West's reporters, the appropriation takes on a greater magnitude. This Court holds, above, that this "small amount" is the key to the West arrangement.

■ This Court is convinced that MDC's star pagination of West's arrangements is both quantitatively and qualitatively substantial. Isolated instances of minor infringements, when multiplied many times, become in the aggregate a major intrusion upon the copyrighted material and must be prevented. *Harper & Row Publishers v. Nation Enterprises,* — U.S. ——, 105 S.Ct. 2218, 2235, 85 L.Ed.2d 588 (1985). By taking West's page numbers, MDC is taking West's arrangement justifying the grant of a preliminary injunction.

4. Effect of the infringing use on the market.

■ The final factor to examine in determining the validity of MDC's fair use claim is the effect that star pagination will have on the market for West Reporters. The fair use doctrine has always precluded a use that supersedes the use of the original. *Harper & Row Publishers v. Nation Enterprises,* — U.S. ——, 105 S.Ct. 2218, 2225, 2226, 85 L.Ed.2d 588 (1985). If both plaintiff's and defendant's works are used for the same purpose and they fulfill the same function in terms of actual or potential customer demand, then a fair use cannot be found. *Metro-Goldwyn-Mayer v. Showcase Atlanta Co-op Prod.,* 479 F.Supp. 351, 361 (N.D.Ga.1979).

There can be little doubt that MDC's incorporation of West's page numbers into the LEXIS reports database will supersede a substantial use of West's hard bound volumes of reporters. Although each is a different medium, both MDC's computers and West's books, serve the function of providing the text of judicial opinions to the public. MDC's star pagination will supplant the need for West's National Reporter System publications; this is not a fair use.

■ MDC has thus far failed to show that its proposed star pagination is not a taking of West's copyrightable arrangements, and MDC has not established that its star pagination constitutes a fair use. For *Dataphase* purposes, West has met the test of probable success on the merits in its claim of copyright infringement.

II. The threat of irreparable harm to West if the preliminary injunction is denied.

In order for a preliminary injunction to issue in this case, West must show that it will be threatened with irreparable harm if the preliminary injunction is denied. This Court finds that West has made the required showing of harm, for *Dataphase* purposes.

■ The general rule in alleged copyright infringement cases is that, for a preliminary injunction motion, irreparable injury is presumed once the movant has established a *prima facie* case of copyright infringement. *Video Views, Inc. v. Alexander,* No. 4–84–623, slip op. (D.Minn. Feb. 19, 1985); *Northwestern Bell Tel. Co. v. Bedco of Minn., Inc.,* 501 F.Supp. 299, 303 (D.Minn.1980). Although this Court has noted that the general rule is more commonly applied to copyrighted materials other than compilations, it nonetheless recognizes the presumption when the movant has a strong claim for copyright infringement. *Northwestern Bell,* 501 F.Supp. at 303. This Court sets forth its holding that West has made a strong claim for copyright infringement. Therefore, the presumption of irreparable harm can be applied.

Even if the Court did not apply the presumption of irreparable harm, it is appar-

ent that West has still made the necessary showing of harm for *Dataphase* purposes. If the defendant's use of plaintiff's copyrighted product may materially reduce the demand for West's product, a sufficient showing of irreparable injury for preliminary injunction purposes has been made. *Wainwright Sec. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2nd Cir.1977). West has asserted by affidavit that star pagination may reduce the need for its services and, in fact, claims that cancellation of a subscription to West's law reports has already occurred as a result of MDC's impending star pagination. *See,* Affidavit of Thomas A. Woxland. Therefore, West has made the requisite showing of irreparable injury.

III.  The harm to West if the injunction is denied compared to the harm to MDC if the injunction is granted.

*Dataphase* requires balancing the harm inflicted by the grant of a preliminary injunction against any harm that will result from its denial. At oral argument on this subject, the principal harm suggested by MDC is loss of market supremacy for its having achieved this claimed advance in legal research. There was also a possibility that West might use the delay caused by an injunction to develop its own star pagination technique. This Court finds that neither position is substantial enough to seriously weigh in the *Dataphase* balance.

■ The market supremacy claim is easily dealt with: this Court finds that any market supremacy which MDC has generated is a function of its ability to infringe a copyright. This the Court will not protect.

■ As to MDC's second claim, it is true that West has a computer assisted legal research system similar to LEXIS known as WESTLAW. MDC states that WESTLAW does not have a star pagination feature and indicates that if a preliminary injunction is issued, West will have time to develop such a feature, thus destroying any market lead time MDC may have had

in introducing star pagination. This claim is speculative at best. MDC cannot possibly know what features West intends to introduce in its WESTLAW system. Even if West were to introduce a star pagination feature, it should be noted that West would be referring to its own page numbers, from its own volumes of law reports, from its own National Reporter System publications. MDC has failed to show that any speculative harm to it will outweigh the probable harm to West.

IV.  Public Interest.

■ The final factor to consider in determining whether a preliminary injunction should issue under *Dataphase* is the public interest in granting or denying the proposed injunction. The Court finds that the public interest favors preliminary injunctive relief.

The Constitution grants to Congress the power "[t]o promote the progress of ... useful arts, by securing for limited times to authors ... the exclusive right to their respective writings". U.S. CONST. art. I, sec. 8, cl. 8. This is a means by which an important public purpose may be achieved. It is intended to motivate creative activity by the provision of a special reward, and eventually allows the public total access to the products of their genius after the limited period of exclusive control has expired. The monopoly created by copyright thus rewards the individual author in order to benefit the public. *Harper & Row Publishers v. Nation Enterprises,* —— U.S. ——, 105 S.Ct. 2218, 2223 (1985). Without the economic incentive to create which copyright protection provides, this incentive and the advantages it creates for the society may well be lost.

MDC in its briefs and memoranda finds it both "ludicrous" and "absurd" to believe that West would abandon its currently lucrative business if copyright protection was not extended to its page numbers. Considering, however, that MDC's star pagination may do away with the need for West's

reporters, this conclusion is not so hard to believe.

MDC claims that the public interest favors denying a preliminary injunction because its intended star pagination would give judges, lawyers and citizens freer access to the entire body of law. That is, the public need for access to the law, which is currently embodied in West's publications, should reduce or eliminate West's exclusive rights in its material. This Court is not pursuaded. In dealing with a similar assertion, the Supreme Court in *Harper & Row Publishers v. Nation Enterprises*, ── U.S. ──, 105 S.Ct. 2218, 2230, 85 L.Ed.2d 588 (1985) stated that:

> It is fundamentally at odds with the scheme of copyright to accord lesser rights in those works that are of greatest importance to the public. Such a notion ignores the major premise of copyright and injures author and public alike. "[T]o propose that fair use be imposed whenever the 'social value [of dissemination] ... outweighs any detriment to the artist,' would be to propose depriving copyright owners of their right in the property precisely when they encounter those users who could afford to pay for it." ... "If every volume that was in the public interest could be pirated away by a competing publisher, ... the public [soon] would have nothing worth reading."

As the Supreme Court makes clear, reducing copyright protection to works of public import would create an economic disinsentive to create the work which would ultimately jeopardize the creation of these very works. Therefore, the public interest mandates that MDC's star pagination be restrained.

*Conclusion*

Based upon the above analysis of the factors necessary for a preliminary injunction under *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981) and for the reasons set forth herein,

IT IS ORDERED that:

1. Plaintiff's motion for a preliminary injunction pursuant to Rule 65, F.R.Civ.P. is granted.

2. This preliminary injunction shall be effective upon the plaintiff's filing with the Clerk of this Court a bond pursuant to Rule 65(c), F.R.Civ.P., in the amount of $100,000.

3. Defendant's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied.