Mr. J. Denis Moran Director of State Courts Supreme Court of Wisconsin 213 Northeast, State Capitol Madison, Wisconsin 53702
Dear Mr. Moran:
You ask the following questions and provide the following background information:
 1. Are Wisconsin Supreme Court and Court of Appeals decisions, both before and after official publication as Callaghan's Wisconsin Reports, in the public domain? Or, are they protected by copyright?
 2. Can an individual offer these decisions for sale commercially in other formats, i.e., text retrieval computer software, without copyright infringement or running afoul of the fair use doctrine?
 The situation that prompts this request for an opinion is as follows: Several months ago, a legal research software program developed by a private vendor was installed on the CCAP computer system in Dane County. That software program is currently being used on a trial basis by several Dane County judges. Essentially, the software program is a text retrieval program similar in nature to LEXIS or WESTLAW. To the best of my knowledge, it contains only Wisconsin Supreme Court and Court of Appeals decisions from volume 140 Wis.2d to the present and does not include headnotes or page numbers. The vendor would like CCAP to purchase this software program and make it available to all circuit court judges. Obviously, CCAP does not want to purchase computer software that infringes any copyright.
As you note in your request, two basic propositions appear to be well established. The first is that there can be no copyright in *Page 46 
judicial opinions. The second is that there may be copyright in compilations of judicial opinions.
 A "compilation" is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term "compilation" includes collective works.
17 U.S.C.A. § 101 (West 1977).
The first proposition that there can be no copyright in judicial opinions is well grounded in legal authorities and underlying policy.
Judicial opinions issued by the court are treated as public domain materials ab initio and cannot be protected by copyright. L. Ray Patterson Craig Joyce, Monopolizing the Law: The Scopeof Copyright Protection for Law Reports and StatutoryCompilations, 36 UCLA L. Rev. 719, 735 (1989). In Wheaton v.Peters, 33 U.S. (8 Pet.) 591, 668 (1834), the United States Supreme Court held "that no reporter has or can have any copyright in the written opinions delivered by this court; and that the judges thereof cannot confer on any reporter any such right." In Banks v. Manchester, 128 U.S. 244 (1888), the Court ruled that opinions of state court judges are not copyrightable, primarily on public policy grounds:
 Judges . . . can themselves have no . . . proprietorship, as against the public at large, in the fruits of their judicial labors . . . . The question is one of public policy, and there has always been a judicial consensus, from the time of the decision in the case of Wheaton v. Peters, 8 Pet. 591, that no copyright could under the statutes passed by Congress, be secured in the products of the labor done by judicial officers in the discharge of their judicial duties. The whole work done by the judges constitutes the authentic exposition and *Page 47 
interpretation of the law, which, binding every citizen, is free for publication to all . . . .
Patterson Joyce, 36 UCLA L. Rev. at 735.
In short, judicial opinions are to be treated as public domain materials ab initio. Id.
Compilations of judicial opinions are treated as "fact" works and are generally subject to the same standards of originality and expressive content as are applied to compilations of facts. 1 Paul Goldstein, Copyright: principles law and practice, sec. 2.16.1.1 (1989 Supp. 1992).
The second proposition that there may be copyright in compilations of judicial opinions is also accurate, but the availability and scope of the protection is probably not as broad as has been indicated by even a substantial number of legal opinions over the last half century. We learn this from the relatively recent United States Supreme Court decision in FeistPublications v. Rural Telephone Service Co., 499 U.S. ___,111 S. Ct. 1282 (1991). Your request therefore invites a very timely review of the status and protection accorded to compilations of judicial opinions under the copyright law.
Feist refocuses on the fundamental requirement of "originality" under the copyright law. "Originality is a constitutional requirement." Feist, 111 S.Ct. at 1288. Originality is an expressed element of copyrightability under the federal copyright statute: "Copyright protection subsists, in accordance with this title, in original works of authorship. . . ." 17 U.S.C.A. § 102 (a) (West Supp. 1993). Originality "is the very `premise of copyright law.'" Feist,111 S.Ct. at 1288.
"Originality" is the key to understanding why as a matter of copyright law, facts are not protected and compilations of facts may be. Facts by their very nature are not original; they may be newly discovered by an author, but they are not created by the author. Feist, 111 S.Ct. at 1288. On the other hand, compilations may involve the contribution of original material by the author or may entail enough selection, coordination or arrangement so *Page 48 
that the work as a whole can be properly considered an original work of authorship. Feist, 111 S.Ct. at 1287, 1289.
Technically, the statutory term "compilation" is reserved for collection of preexisting materials. 17 U.S.C. § 101.
 The statute identifies three distinct elements and requires each to be met for a work to qualify as a copyrightable compilation: (1) the collection and assembly of pre-existing material, facts, or data; (2) the selection, coordination, or arrangement of those materials; and (3) the creation, by virtue of the particular selection, coordination, or arrangement, of an "original" work of authorship.
Feist, 111 S.Ct. at 1293.
17 U.S.C.A. § 103 (b) (1977) expressly states that the scope of protection for compilations "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." As stated by the Court in Feist, 111 S.Ct. at 1289: "No matter how original the format, however, the facts themselves do not become original through association."
In evaluating the copyright status of a compilation of case reports, I see four categories of material: First, the text of the court's opinions as published by the court. Second, material that is contributed to the compilation by the compiler, e.g.
headnotes. Third, the selection, coordination and arrangement of materials in the compilation. Fourth, page numbers. I treat page numbers as a separate category because I believe it will facilitate the treatment of the second and third categories and because page numbers warrant special attention in light of the earlier decision in WestPub. Co. v. Mead Data Cent., Inc., 616 F. Supp. 1571 (D. Minn. 1985), aff'd, 799 F.2d 1219 (8th Cir. 1986), cert. *Page 49 denied, 479 U.S. 1070 (1987), which you cite in your opinion request.[1]
As discussed above, the text of judicial opinions are not protectible by copyright.
As to new material added by a compiler, the Supreme Court has specifically stated that a protectible interest may subsist in "the title-page, table of cases, headnotes, statements of facts, arguments of counsel, and index" to the extent that they are the original work of the reporter. Callaghan v. Myers, 128 U.S. 617,649 (1888). Patterson Joyce, 36 UCLA L. Rev. at 737. This appears to continue to be a sound proposition, but in the wake ofFeist the need to evaluate the originality of the work has been brought to the forefront. It is my expectation that the kinds of contributions recognized in Myers will continue to be protected under Feist.
The protectibility of the selection, coordination or arrangement of a compilation presents a more difficult question the answer to which will depend on the specific circumstances of the particular case with the principal focus being on whether "the selection, coordination, and arrangement are sufficiently original to merit protection." Feist, 111 S.Ct. at 1294. There are two separate questions: How much originality and how much protection?
 [O]riginality is not a stringent standard; it does not require that facts be presented in an innovative or surprising way. It is equally true, however, that the selection and arrangement of facts cannot be so mechanical or routine as to require no creativity whatsoever. The standard of originality is low, but it does exist. . . . As this Court has explained, the Constitution mandates some minimal degree of creativity, and an author who claims infringement must prove "the *Page 50 
existence of . . . intellectual production, of thought, and conception."
Feist, 111 S.Ct. at 1296 (citations omitted).
Regarding the scope of protection, 17 U.S.C.A. § 103 (b) states as follows:
 The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.
If there is sufficient originality in selection, coordination or arrangement, then typically copyright protection extends to the work as a whole, not because the whole work has become subject to copyright, but because it is only as a whole that the features of selection, coordination or arrangement are implicated. For example, another is precluded from copying the whole work because to do so would necessarily encompass the entire original selection, coordination and arrangement. On the other hand, another would be entirely free to copy an opinion within the compilation, because the opinion itself is not subject to any copyright interest and the copying of one opinion will not implicate any selection, coordination or arrangement embodied in the work as a whole. Perhaps another way to look at it is that if some aspect of a compilation is subject to copyright, one cannot copy the whole because the copying of the whole would necessarily involve copying the part that is protected. If one copies only a part of work, the questions become focused on whether the part copied is the part protected.
As explained by Eaton S. Drone in his classic treatise on nineteenth century copyright law:
 No protection is given to the component parts of a compilation independently of their arrangement and *Page 51 
combination. Of these, the compiler is not the author, and he can have no exclusive property in what is common and open to all. Nor is the arrangement and combination, independently of the materials themselves, a proper subject of copyright. . . . The copyright vests in the materials as combined and arranged: in the union of form and substance. Any one may use the same materials in a different combination, or adopt a similar arrangement for different selections. But no person can copy both the substance and the arrangement of a compilation, and use the same materials in the same form without committing piracy.
Paterson Joyce, 36 UCLA L. Rev. at 739.
In Feist, the Supreme Court decided that even extensive copying of another's telephone directory white pages did not implicate copyright protection. The raw data consisting of names, towns and telephone numbers were uncopyrightable facts. There was no "selection" involving originality because it was basically automatic that subscribers to the plaintiff's telephone service would be listed in its telephone directory. Although the names were arranged alphabetically, there "is nothing remotely creative about arranging names alphabetically in a white pages directory."Feist, 111 S.Ct. at 1297.
In the course of its decision in Feist, the Court repudiated the notions of "industrious collection" and "sweat of the brow" that had been developed by and extensively accepted by the courts as a basis for protecting the hard (as opposed to original) work of compilers of facts. The Court also corrected the mistaken notion that compilations were copyrightable per se due to the way they were specifically mentioned in the earlier 1909 Copyright Act. Feist, 111 S.Ct. at 1291-93.
Turning to the question at hand, a dispositive decision would have to await a full factual development of just what the compiler of judicial opinions does in a particular case in the way of selection, coordination or arrangement. However, there are good reasons to question whether the typical compiler's work, as *Page 52 
generally understood, will qualify. Patterson Joyce, 36 UCLA L. Rev. at 763-72. It is our understanding that all Wisconsin Supreme Court decisions are selected for publication by the court and that court of appeals decisions are selected for publication by the court's publication committee. Thus selection is made by the courts not the compilers. We are not aware of any evidence of originality in the coordination or arrangement of opinions within volumes. As stated in Patterson Joyce:
 [N]othing in the majority opinion suggests anything to contradict the conclusions one can reach simply by examining individual volumes of West's reports. West may or may not "select" cases for inclusion in a volume. But clearly it does not "coordinate" cases within the volume, except in ways dictated by its subminimally original categorization system. Nor does it "arrange" cases in any discernible fashion within the volume, but instead prints them in an order completely lacking expressive character or even utility — an order presumably determined by date of decision or receipt, subject to the printer's convenience (and any necessary intervening communications with the deciding courts).
Patterson Joyce, 36 UCLA L. Rev. at 771 (footnote omitted).
The final category to consider is pagination within the compiler's volumes. This is treated as a special subject because the pagination of a compilation of judicial opinions was held to be protected by copyright in West Pub. Co. However, the validity of that opinion is in serious doubt in the wake of the United States Supreme Court's decision in Feist. This is so because of the substance of the Feist decision and its renewed emphasis on the constitutional requirement of originality. But there is a further less obvious reason. A reader will find that throughout the Feist decision, the Court embraces the work of Patterson Joyce. See, Feist,111 S.Ct. at 1288-89, 1296. The mission of that nearly 100-page article is to discredit the decision in West Pub. Co. In *Page 53 
my opinion they succeed, and I believe the United States Supreme Court agrees. In the words of these commentators:
 As to page numbers in law reports, one strains mightily to identify anything therein which expresses the "unique personal reaction" of the compilation author upon the subject matter — that is, anything which contributes "some substantial, not merely trivial, originality" to the preexisting matter which the compilation author has taken from the public domain. Authorship originates not on a piece of paper or a computer disk but in the author's mind, whereas generally pagination is an element added mechanically by the printer long after the author has departed the scene. Not surprisingly, the traditional view has been that providing pagination, particularly for a public domain work, is too minimal a contribution to sustain a copyright, and that taking only the pagination in such a work does not infringe the compilation author's just rights.
. . . .
 To state the matter succinctly, West's paging of any given volume of reports is not an extension of copyrightable case arrangement. Pagination is, rather, "a purely mechanical process dictated entirely by the format" of the volume. Thus, West's page numbers, systematically added in the composition (rather than the editorial) process, are, like its arrangements, incapable of protection.
Patterson Joyce, 36 UCLA L. Rev. at 764-65, 772 (footnotes omitted).
With this background, I return to the specific questions that you have posed:
 1. Are Wisconsin Supreme Court and Court of Appeals decisions, both before and after official publication as Callaghan's Wisconsin Reports, in the public domain? Or, are they protected by copyright? *Page 54 
It appears quite clear that the appellate court decisions per se are not copyrightable as issued by the court and no subsequent inclusion in a compilation will change that status. The opinion itself is in the public domain wherever it is found.
 2. Can an individual offer these decisions for sale commercially in other formats; i.e., text retrieval computer software, without copyright infringement or running afoul of the fair use doctrine?
There is no question that a business may take appellate court opinions per se and sell them, and a business may take appellate court opinions per se and convert them to a computerized format and sell them.
If the business is working not from the appellate court decisions per se but from a compilation developed, for example byCallaghan's, it continues to be true that the opinions per se may be copied freely. The question becomes whether the compiler has contributed something sufficiently original so that the compiler has some protectible copyright interest that must be honored by the subsequent business user.
From the discussion above, it is my opinion that a compiler of judicial opinions probably will be able to establish copyright interests in original material added to the compilation such as those recognized in Callaghan v. Myers. Theoretically, a compiler could have protection against copying of the entire compiled work if there is sufficient originality in the selection, coordination or arrangement of the opinions. However, in the wake of Feist and its embrace of the work of Patterson and Joyce, it is my opinion there is serious doubt whether there is copyright protection for the standard compilation of judicial opinions and this doubt extends to the pagination of those compilations. To be any more definite, I will need to have more details as to exactly what the private vendor is using from preexisting sources. *Page 55 
Finally, you mention the "fair use doctrine" which is codified as follows in 17 U.S.C.A. § 107 (West Supp. 1993):
 Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include —
 (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
(2) the nature of the copyrighted work;
 (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and
 (4) the effect of the use upon the potential market for or value of the copyrighted work.
It is very unlikely that the fair use doctrine will be available under the circumstances you pose. It is likely that consideration of all factors under 17 U.S.C.A. § 107 will work against allowance as fair use. Summarily, as to the first and fourth factors, the use is commercial and will probably be in competition with other businesses offering access to judicial opinions. As the second and third factors, if there is any copyrightable interest in a preexisting compilation, it is probable that the copyrightable aspect (e.g. headnotes as new material or original arrangement) will be copied in their entirety if they are copied at all. It would probably not be efficacious for a commercial copier to limit copying to an extent that would arguably qualify for fair use treatment. Again, a more definite answer would depend on the details.
Sincerely,
 James E. Doyle Attorney General
[1] There appears to be no dispute in the industry that the numeration of the volumes and the legal citations that are composed of volume numbers and page numbers are not restricted by copyright. West Pub. Co. v. Mead Data Cent., Inc., 799 F.2d 1219,1222, 1234 (8th Cir. 1986) (Oliver, J. dissenting at 1234). *Page 56