MATTHEW BENDER & COMPANY, INC., Plaintiff–Appellee,

Hyperlaw, Inc., Intervenor–Plaintiff–Appellee,

v.

WEST PUBLISHING CO.; West Publishing Corporation, Defendants–Appellants.

Docket No. 97–7430.

United States Court of Appeals, Second Circuit.

Argued March 16, 1998.

Decided Nov. 3, 1998.

desire to make money by copying West's valuable editorial work.

Morgan Chu, Los Angeles, CA (David Nimmer, Elliot Brown, Perry Goldberg, Irell & Manella LLP, on the brief), for Plaintiff–Appellee.

Paul J. Ruskin, Douglaston, NY (Carl J. Hartmann, New York, NY, Lorence L. Kessler, Washington, DC, on the brief), for Intervenor–Plaintiff–Appellee.

Arthur R. Miller, Cambridge, MA (James F. Rittinger, Joshua M. Rubins, Satterlee Stephens Burke & Burke LLP, New York, NY, on the brief), for Defendants–Appellants.

David Seidman, Attorney, United States Department of Justice, Washington, DC (Joel I. Klein, Assistant Attorney General, Lawrence R. Fullerton, Deputy Assistant Attorney General, Robert B. Nicholson, Attorney, United States Department of Justice, on the brief), for Amicus Curiae United States of America.

Before: CARDAMONE and JACOBS, Circuit Judges, and SWEET,[*] District Judge.

Judge SWEET dissents in a separate opinion.

JACOBS, Circuit Judge:

Defendants-appellants West Publishing Co. and West Publishing Corp. (collectively "West") create and publish printed compilations of federal and state judicial opinions. Plaintiff-appellee Matthew Bender & Company, Inc. and intervenor-plaintiff-appellee HyperLaw, Inc. (collectively "plaintiffs") manufacture and market compilations of judicial opinions stored on compact disc-read only memory ("CD–ROM") discs, in which opinions they embed (or intend to embed) citations that show the page location of the particular text in West's printed version of the opinions (so-called "star pagination").[1] Bender and HyperLaw seek judgment declaring that star pagination will not infringe West's copyrights in its compilations of judicial opinions. West now appeals from a judgment of the United States District Court for the Southern District of New York (Martin, J.), granting summary judgment of noninfringement to Bender and partial summary judgment of noninfringement to HyperLaw.[2]

West's primary contention on appeal is that star pagination to West's case reporters allows a user of plaintiffs' CD–ROM discs (by inputting a series of commands) to "perceive" West's copyright-protected arrangement of cases, and that plaintiffs' products (when star pagination is added) are unlawful copies of

---

[*] The Honorable Robert W. Sweet, of the United States District Court for the Southern District of New York, sitting by designation.

1. This cross-reference method is called "star pagination" because an asterisk and citation or page number are inserted in the text of the judicial opinion to indicate when a page break occurs in a different version of the case.

2. The district court granted summary judgment to HyperLaw on the star pagination issue. However, HyperLaw had sought an additional declaration that its duplication of West's version of the captions and text of judicial opinions does not infringe West's copyright. The district court denied summary judgment on that claim, and ruled for HyperLaw following a bench trial. West appeals from that decision as well and we uphold that ruling in a separate opinion issued today. *See Matthew Bender & Co. v. West Publ'g Co.,* 158 F.3d 674 (2d Cir.1998).

West's arrangement. We reject West's argument for two reasons:

A. Even if plaintiffs' CD–ROM discs (when equipped with star pagination) amounted to unlawful copies of West's arrangement of cases under the Copyright Act, (i) West has conceded that specification of the *initial* page of a West case reporter in plaintiffs' products ("parallel citation") is permissible under the fair use doctrine, (ii) West's arrangement may be perceived through parallel citation and thus the plaintiffs may lawfully create a copy of West's arrangement of cases, (iii) the incremental benefit of star pagination is that it allows the reader to perceive West's page breaks within each opinion, which are not protected by its copyright, and (iv) therefore star pagination does not *create* a "copy" of any protected elements of West's compilations or infringe West's copyrights.

B. In any event, under a proper reading of the Copyright Act, the insertion of star pagination does not amount to infringement of West's arrangement of cases.

## BACKGROUND

West creates "case reports" of judicial opinions by combining (i) certain independently authored features, such as syllabi (which summarize each opinion's general holdings), headnotes (which summarize the specific points of law recited in each opinion), and key numbers (which categorize the points of law into different legal topics and subtopics), with (ii) the text of the opinions, to which West adds parallel citations to other reporters, information about the lawyers, and other miscellaneous enhancements. West then publishes these case reports (first in paperbacked advance sheets, and then in hardbound volumes) in various series of "case reporters." These case reporters are collectively known as West's "National Reporter System," and include (as relevant to this case): the *Supreme Court Reporter*, which contains all Supreme Court opinions and memorandum decisions; the *Federal Reporter*, which contains all federal court of appeals opinions designated for publication, as well as tables documenting the disposition of cases that are unpublished; the *Federal Rules Decisions* and *Federal Supplement*, which contain selected federal district court opinions; and the *New York Supplement*, which contains selected New York State case reports.[3] Cases appearing in West's case reporters are universally cited by the volume and page number of the case reporter series in which they appear. One citation guide recommends—and some courts require—citation to the West version of federal appellate and trial court decisions and New York State court decisions. *See The Bluebook: A Uniform System of Citation* at 165–67, 200–

---

3. West's general arrangement of its case reporters is as follows (with each subsequent category dictating the order of cases within the previous category):

> *Supreme Court Reporter:* Cases are organized: (i) by type of opinion (full opinion, then orders and memorandum decisions); (ii) then by order of the filing date; (iii) then by the seniority of the Justice who authored the opinion (*per curiam* opinions follow opinions authored by individual justices); and (iv) then by docket number.
>
> *Federal Reporter:* Cases are organized in advance sheets: (i) by court (first the D.C. Circuit, then the numbered Circuits, and finally the Federal Circuit); (ii) then by type of opinion (first opinions and jacketed memoranda, then "sheet memoranda"; cases reported in tables are placed together at the end of the advance sheet); and (iii) then chronologically. Two or three advance sheets are then combined in a permanent volume.
>
> *Federal Supplement* and *Federal Rules Decisions:* Cases are organized in advance sheets: (i) by circuit; (ii) then alphabetically by state; (iii) then if a state has multiple districts in the following order: Northern, Central, Middle, Eastern, Western and Southern; and (iv) then chronologically. The advance sheets are then combined into a bound volume.
>
> *New York Supplement:* Cases are organized in advance sheets: (i) by format, such as fully headnoted opinions and memorandum decisions; (ii) then by court level; (iii) then by department; and (iv) then chronologically. The advance sheets are then combined into a bound volume.

These general guidelines are subject to specific editorial decisions to publish cases sequentially or in the same volume, or to combine an opinion with a subsequent order amending the opinion or denying rehearing.

01 (16th ed.1996); *see, e.g.,* Third Cir. R. 28.3(a); Eleventh Cir. R. 28–2(k); *see also* *The University of Chicago Manual of Legal Citation* 15 (1989) ("When citing to a state case, indicate the volume and first page of the case for both the official and commercial reporters.").

Bender markets a series of CD–ROM discs [4] called *Authority from Matthew Bender.* One product in this series—the "New York product"—consists of three elements: (i) "New York Law and Practice" (one disc), which contains New York statutory and treatise materials; (ii) "New York Federal Cases" (three discs), which contains cases from the Second Circuit and New York's federal district courts from 1789 to the present; and (iii) "New York State Cases" (four discs), which contains New York State judicial opinions from 1912 to the present (the New York State Court of Appeals cases begin in 1884). These CD–ROM discs contain published opinions and unpublished opinions and orders from these courts.

Bender obtains the text of the judicial opinions through a license from LEXIS (an on-line database containing legal and nonlegal data), and stores the opinions and orders on the discs arranged by court and date, which is also the order in which they would be seen by a user who for some reason browses through the discs without sorting the case reports in a search. For each case

that appears in West's case reporters, Bender intends to insert (and in some cases already has inserted) a parallel citation (*e.g.,* 100 F.3d 101) to the West case reporter at the beginning of the opinion and a citation to the successive West page numbers at the points in the opinion where page breaks occur in the West volume (*e.g.,* *104 or 100 F.3d 104).

Bender uses the FOLIO file-retrieval program, which allows a user to access opinions in several ways, including in the order in which they are stored on the disc, or through term searches, or through a West or LEXIS parallel or page citation. In addition, citations appearing within judicial opinions are "hot linked," so that a user may retrieve the cited case by clicking the mouse on the case citation.

West claims (and for the purposes of this summary judgment motion, we accept as true) that the FOLIO retrieval system permits a user of Bender's product to view (and print) judicial opinions in the same order in which they are printed in a West volume by repeating the following steps: (i) a user activates the jump feature in the program to go to the first page in a West case reporter volume, (ii) pages through to the bottom of the case, (iii) finds the last star pagination reference, and (iv) activates the jump cite feature to retrieve the case beginning on the same or next West page number.[5]

---

**4.** As noted by the parties, CD–ROM publications have several advantages over books, including the capability of: (i) storing large amounts of information in a small amount of space; (ii) locating items in the text using word searches; and (iii) printing out portions of the text or downloading them to disks. In addition, unlike on-line retrieval services which provide some of the same benefits, the CD–ROM user does not incur time charges.

**5.** West's counsel describes the retrieval procedure this way:

Using the [Bender] product, I was able to act in all ways as though I had a physical, print copy of volume 628 of West's *New York Supplement (Second)* series. I typed the West citation "nys2d 628 1," and the product displayed the caption of the case, *"In the Matter of Neftali D.,* 85 N.Y.S.2d 631, 628 N.Y.S.2d 1, 651 N.E.2d 869 (1995)," that West chose to arrange as the first case in volume 628. The product indicated that West's headnotes and other material occupied the rest of page 1, because the text of

the court's decision begins after the star page [628 N.Y.S.2d at 2]. Reading through the text of the decision, I saw where the text that West had put on page 2 ended and where the text on page 3 began, because there was a marker to show where in mid sentence page 2 ended and page 3 began. The marker was a bold green [628 N.Y.S.2d at 3]. Likewise, I saw where page 3 ended, because there was a bold green [628 N.Y.S.2d at 4]. From observing the fact that (1) that there was no marker to show where page 5 began, and (2) that the amount of text after the page 4 marker was notably less than the amount between page 3 and page 4, I could see that the next case in volume 628 also began on page 4 of the volume. I then entered the West citation "nys2d 628 4" to look at the next case, and continued similarly.

I found that I did not even need to type in the West citations if I simply put the cursor at the left hand bracket of the last star page marker of the previous case. With the cursor there, pressing control-d brought up a jump

HyperLaw markets *Supreme Court on Disc*, an annual CD–ROM disc containing opinions of the United States Supreme Court since 1991, and *Federal Appeals on Disc*, a quarterly CD–ROM disc containing nearly all opinions (published and unpublished) of the federal courts of appeals since January 1993.[6] HyperLaw currently obtains the text of its opinions directly from the courts and includes in its *Federal Appeals* CD–ROM disc many more cases than published by West. The opinions are organized on the CD–ROM disc in an order that is "approximately chronological." HyperLaw includes parallel citations to West's case reporters for all cases appearing in the *Supreme Court Reporter* and the *Federal Reporter*, and intends to add star pagination as well.[7]

Bender's complaint sought a judgment declaring that star pagination to West's case reporters will not copy West's arrangement or infringe West's copyright. HyperLaw intervened seeking the same relief. All parties then moved for summary judgment. The district court granted summary judgment to plaintiffs on the star pagination issue, concluding that the insertion of star pagination to West's volumes on the CD–ROM version of the cases would not reproduce any protectable element of West's compilation. The court noted that "the protection extends only to those aspects of the compilation that embody the original creation of the compiler" and that "where and on what particular pages the text of a court opinion appears does not embody any original creation of the compiler, and therefore . . . is not entitled to

protection." The court further ruled that star pagination would be permitted under the fair use doctrine even if West's pagination were copyrightable.

## DISCUSSION

■■■ West's case reporters are compilations of judicial opinions. The Copyright Act defines a "compilation" as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101 (1994). Compilations are copyrightable, but the copyright "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." 17 U.S.C. § 103 (1994).[8] Works of the federal government are not subject to copyright protection, 17 U.S.C. § 105 (1994), although they may be included in a compilation.

*Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991), is the seminal Supreme Court decision on copyrights in compilations. In *Feist*, the publisher of a telephone book claimed that a competitor had infringed its compilation copyright by copying some of its white pages listings. The Court clarified ·the scope of a copyright in compilations: "A factual compilation is eligible for copyright if it features an original selection or arrangement of facts, but the

---

link destination box with the West cite already typed in for me, such as "nys2d 628 p4." Deleting the "p," I could then go to the next case as arranged in volume 628 of West's *New York Supplement* without having to type the full cite.

6. The record seems to indicate that since the commencement of this suit, HyperLaw has combined these two products into one.

7. HyperLaw claims that its product does not permit users to view cases in the same order as they appear in the West case reporters. However, the district court did not distinguish between Bender's and HyperLaw's display and retrieval capabilities, and because it does not affect the outcome of this case, we will assume that HyperLaw's product has the same retrieval capabilities as the Bender product.

8. Section 103 of the Copyright Act provides:

(a) The subject matter of copyright as specified by section 102 includes compilations and derivative works, but protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully.

(b) The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material.

17 U.S.C. § 103.

copyright is limited to the particular selection or arrangement. In no event may copyright extend to the facts themselves." *Id.* at 350–51, 111 S.Ct. at 1290. Because of this limitation on protectability, "the copyright in a factual compilation is thin. Notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement." *Id.* at 349, 111 S.Ct. at 1289. The Court expressly rejected the "sweat of the brow" doctrine, which had justified the extension of copyright protection to the facts and other non-original elements of compilations on the basis of the labor invested in obtaining and organizing the information. *Id.* 359–60, 111 S.Ct. at 1295.

■ Under *Feist*, two elements must be proven to establish infringement: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Id.* at 361, 111 S.Ct. at 1296. Bender and HyperLaw concede that West has proven the first element of infringement, *i.e.*, that West owns a valid copyright in each of its case reporters.

■ However, as is clear from the second *Feist* element, copyright protection in compilations "may extend only to those components of a work that are original to the author." *Id.* at 348, 111 S.Ct. at 1289. The "originality" requirement encompasses requirements both "that the work was independently created ..., *and* that it possesses at least some minimal degree of creativity." *Id.* at 345, 111 S.Ct. at 1287 (emphasis added); *see also Key Publications, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509, 512–13 (2d Cir.1991) ("Simply stated, original means not copied, and exhibiting a minimal amount of creativity."). At issue here are references to West's volume and page numbers distributed through the text of plaintiffs' versions of judicial opinions. West concedes that the pagination of its volumes—*i.e.*, the insertion of page breaks and the assignment of page numbers—is determined by an automatic computer program, and West does not seriously claim that there is anything original or creative in that process. As Judge Martin noted, "where and on what particular pages the text of a court opinion appears does not embody any original creation of the compiler." Because the internal pagination of West's case reporters does not entail even a modicum of creativity, the volume and page numbers are not original components of West's compilations and are not themselves protected by West's compilation copyright.[9] *See Feist*, 499 U.S. at 363, 111 S.Ct. at 1297 ("As a constitutional matter, copyright protects only those constituent elements of a work that possess more than a *de minimis* quantum of creativity.").

Because the volume and page numbers are unprotected features of West's compilation process, they may be copied without infringing West's copyright.[10] However, West proffers an alternative argument based on the fact (which West has plausibly demonstrated)

---

9. The same conclusion can be arrived at using a different chain of reasoning. There is a fundamental distinction under the Copyright Act between the original work of authorship and the physical embodiment of that work in a tangible medium. *See* H.R.Rep. No. 94–1476, at 53 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5666 (noting "a fundamental distinction between the 'original work' which is the product of 'authorship' and the multitude of material objects in which it can be embodied. Thus, in the sense of the [Act], a 'book' is not a work of authorship, but is a particular kind of 'copy.' Instead, the author may write a 'literary work,' which in turn can be embodied in a wide range of 'copies' and 'phonorecords'...."). The embedding of the copyrightable work in a tangible medium does not mean that the features of the tangible medium are also copyrightable. Thus, here, the original element of West's compilation, its arrangement of cases, is protectable, while the features of the physical embodiment of the work, *i.e.*, the page numbers, are not.

10. The dissent would extend copyright protection to all page numbers because, when inserted into a complete set of opinions appearing in West's case reporters, they reflect the arrangement of those reporters. Dissent at page 709. But such an approach would extend copyright to page numbers which do not represent an exercise of original authorship. Although the arrangement of West's cases may be copyrightable, and although *complete* star pagination may permit the perception of that arrangement, there is no support for extending copyright protection to an unoriginal element because when completely copied it reveals a protected element rather than copies it.

that plaintiffs have inserted or will insert *all* of West's volume and page numbers for certain case reporters. West's alternative argument is that even though the page numbering is not (by itself) a protectable element of West's compilation, (i) plaintiffs' star pagination to West's case reporters embeds West's arrangement of cases in plaintiffs' CD–ROM discs, thereby allowing a user to perceive West's protected arrangement [11] through the plaintiffs' file-retrieval programs, and (ii) that under the Copyright Act's definition of "copies," 17 U.S.C. § 101, a work that allows the perception of a protectable element of a compilation through the aid of a machine amounts to a copy of the compilation. We reject this argument for two separate reasons.[12]

### A

■ West asserts an indirect infringement theory: (i) the embedding of unprotectable volume and page numbers in a CD–ROM disc (so-called "compilation markers" or "tags"), (ii) permits a user to perceive West's arrangement of cases through the aid of a machine, and (iii) this amounts to a copy of the compilation's arrangement under § 101's definition of "copies." Assuming for the moment that West has properly read the Act, *i.e.*, that a copy of the arrangement is created when the arrangement can be perceived with the aid of a user *and* a machine, we think it is clear that the copy is not created by insertion of star pagination.

West concedes that insertion of parallel citations (identifying the volume and first page numbers on which a particular case appears) to West's case reporters in plaintiffs' products (as well as any other compilations of judicial opinions) is permissible under the fair use doctrine.[13] *See* West Reply Brief at 5 n.5 (noting "West's long-held posi-

---

**11.** West claims that its arrangement of cases, *see supra* note 3, is original and worthy of copyright protection. Hyperlaw (but not Bender) argues that West's arrangement of cases in the *Supreme Court Reporter* and the *Federal Reporter* (the case reporters containing the opinions included on HyperLaw's CD–ROM discs) is insufficiently original to be copyrightable. But because we find that West's arrangement has not been copied through the insertion of star pagination to West's case reporters, we can assume without deciding that West's case reporters contain an original and copyrightable arrangement.

In addition, this opinion will not address any copying by plaintiffs of the *selection* of cases included in West's case reporters. First, West argued below that Bender had copied West's arrangement of cases, not its selection. Second, it is uncontested that plaintiffs' compilations include many more opinions than West's case reporters. For example, *HyperLaw's* second quarter 1996 CD–ROM disc contained approximately 36,000 Supreme Court and court of appeals decisions, only 22,000 of which were published by West. The selection of cases for *Bender's* product also differs from West's: (i) it contains many unpublished decisions not found in West's reporters, and (ii) unlike West's *Federal Reporter, Federal Supplement,* and *Federal Rules Decisions,* Bender's product includes only federal cases decided by *New York* courts. Accordingly, we cannot find that the selection of cases in plaintiffs' compilations is substantially similar to West's selection. *See Tasini v. New York Times Co.,* 972 F.Supp. 804, 823 (S.D.N.Y.1997) (Sotomayor, J.) (noting that to find infringement of selection, "the subsequent work cannot differ in selection by 'more than a trivial degree' from the work

that preceded it") (citing *Kregos v. Associated Press,* 937 F.2d 700, 710 (2d Cir.1991)).

**12.** Plaintiffs cite *Banks Law Publishing Co. v. Lawyers' Co-Operative Publishing Co.,* 169 F. 386 (2d Cir.1909), in arguing that star pagination to case reporters is permissible, and they intimate that *Banks* held that the arrangement of cases cannot be copyrightable. *Banks*'s holding seems to have rested on the plaintiff's status as an official reporter. *See id.* at 389 (reprint of text of district court opinion) ("A reasonable interpretation of the statute prescribing his duties implies pagination, volumes of uniform size and reasonable thickness, together with a suitable and convenient arrangement of the cases."). True, our opinion in *Banks* adds that "[i]t is not necessary to discuss so much of the opinion below as deals with the question[ ] of . . . the right of the official reporter to secure copyrights," *id.* at 391, which could imply either that our holding did not rest on the official status of the reporter but on the lack of originality in the arrangement *or* that the foregone analysis concerns the copyrightability of elements not dictated by statute. In any event, Bender concedes for the purpose of summary judgment that West's arrangement is sufficiently original to merit copyright protection; *Banks* does not assist in answering the distinct question of whether star pagination infringes the arrangement of another reporter if the arrangement of the cross-paginated work is copyrightable; and *Banks* preceded even the effective date of the Copyright Act of 1909. We decline to decide this case on the strength of *Banks.*

**13.** According to Bender and HyperLaw, West has admitted before various courts and congres-

tion that parallel citation to West case reports by competitors (*without* additional star pagination) is a fair use under 17 U.S.C. § 107—*i.e.*, an *otherwise infringing use* that, when analyzed under the § 107 factors, is deemed 'fair' "); West's Response to Bender's Rule 3(g) Statement ¶ 32, Joint Appendix at 1581; *see also West Publ'g Co. v. Mead Data Central, Inc.*, 799 F.2d 1219, 1222 (8th Cir.1986) ("West concedes that citation to the first page of its reports is a noninfringing 'fair use' under 17 U.S.C. § 107."). West admitted at oral argument (as it did in the district court [14]) that these parallel citations already allow a user of plaintiffs' CD–ROM discs to perceive West's arrangement with the aid of a machine and that plaintiffs' CD–ROM discs therefore already have created a lawful "copy" of West's arrangement on their CD–ROM discs—as West defines "copy." [15]

Once the copy has thus been created through parallel citation—assuming that anyone would wish to avail themselves of the capability of perceiving this copy—the only incremental data made perceivable (through the aid of a machine) by star pagination is the location of page breaks within each judicial opinion. But since page breaks do not result from any original creation by West, their location may be lawfully copied. We therefore conclude that star pagination's volume and page numbers merely convey unprotected information, and that their duplication does not infringe West's copyright.

The opposite conclusion was reached by the district court in *Oasis Publishing Co. v. West Publishing Co.*, 924 F.Supp. 918 (D.Minn.1996), which reasoned that the fair-use copying of parallel citation, which could be used to perceive the arrangement of cases, did not excuse copying interior pagination, which could also be used to perceive arrangement. *See id.* at 926.[16] It is true that copying under the fair use doctrine will not necessarily permit additional uses, and will not excuse additional copying that in the aggregate amounts to infringement. But a compilation has limited protectability; only the original elements of a compilation (*i.e.*, its selection, arrangement, and coordination) are protected from copying. The insertion of parallel citations already creates a "copy" of West's arrangement (at least as West defines a copy), a copy that is permissible under the fair use doctrine. Star pagination cannot be said to create *another* copy of the same arrangement. Prohibiting star pagination would simply allow West to protect *unoriginal* elements of its compilation that have assumed importance and value. Accordingly,

sional panels that West's parallel citation is in the *public domain*. But these statements were not in the context of a legal proceeding or unequivocal, and there is no evidence that a court has adopted this position in some manner. *See AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 628 (2d Cir.1996) (noting that "[a] party invoking judicial estoppel must show that (1) the party against whom judicial estoppel is being asserted advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner").

14. The following exchange occurred before the district court:

THE COURT: Star pagination, though, you say if by using the star pagination they can duplicate through their computer the West system, why can't they do that, why ... can't they reproduce your compilation simply by using the first page?

MR. MUSILEK [West's Counsel]:

Your Honor, they can. They cannot show where in fact page breaks occur; they cannot show the page numbers associated with those page breaks for finding specific portions of text.

Joint Appendix at 3507.

15. A user of plaintiffs' CD–ROM products containing only parallel citation to West's case reporters could use the same method described by West's attorney, *see supra* note 5, to recreate West's arrangement, although it might require some trial and error to locate the exact page where the next West case begins.

16. The court noted:

Although with either the parallel cites *or* an internal cite from each case a user could sort West's cases and determine West's arrangement, the former does not utterly supplant the need for West's product while the latter does.

Conceding parallel citation to the first page of each case as a noninfringing fair use does not diminish West's copyright interest in the subsequent internal pages, which also would *independently* permit arrangement of the cases by sorting. Having gotten the inch under the conceded fair use of parallel citation to the first page of each case, Oasis is not thereby entitled to take the entire mile in star citation to *every* page.

*Oasis Publ'g Co.*, 924 F.Supp. at 926.

even were we to agree with West's interpretation of the Copyright Act, we would not find infringement.

**B**

■ But our rejection of West's position is even more fundamental. If one browses through plaintiffs' CD–ROM discs from beginning to end, using the computer software that reads and sorts it, the sequence of cases owes nothing to West's arrangement. West's argument is that the CD–ROM discs are infringing copies because a user who manipulates the data on the CD–ROM discs could at will re-sequence the cases (discarding many of them) into the West arrangement. To state West's theory in the statutory words on which West (mistakenly) relies, each of the plaintiffs' CD–ROM discs is a "copy" because West's copyrighted arrangement is "fixed" on the disc in a way that can be "perceived . . . with the aid of a machine or device." 17 U.S.C. § 101 (1994).

For reasons set forth below, we conclude that a CD–ROM disc infringes a copyrighted arrangement when a machine or device that reads it perceives the embedded material in the copyrighted arrangement or in a substantially similar arrangement. At least absent some invitation, incentive, or facilitation not in the record here, a copyrighted arrangement is not infringed by a CD–ROM disc if a machine can perceive the arrangement only after another person uses the machine to re-arrange the material into the copyrightholder's arrangement.

*1. Section 101's Definition of "Copies"*

West relies on the statutory definition of "copies." To establish infringement, the copyright holder must demonstrate a violation of an exclusive right. 17 U.S.C. § 501 (1994). One such right is the right "to reproduce the copyrighted work in *copies* or phonorecords." 17 U.S.C. § 106(1) (1994) (emphasis added). Section 101 of the Copyright

Act defines "copies" as follows, the emphasis supplied on terms implicated by the analysis in this case:

> "Copies" are material objects, other than phonorecords, in which a work is *fixed by any method* now known or later developed, and *from which the work can be perceived,* reproduced, or otherwise communicated, either directly or *with the aid of a machine or device.* The term "copies" includes the material object, other than the phonorecord, in which the work is first fixed.

17 U.S.C. § 101. "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy . . . is sufficiently permanent or stable to permit it to be *perceived, reproduced,* or otherwise communicated for a period of more than transitory duration." *Id.* (emphasis added).

■ The Copyright Act establishes a "fundamental distinction" between the original work of authorship and the material object in which that work is "fixed." *See supra* note 9. The sole purpose of § 101's definitions of the words "copies" and "fixed" is to explicate the "fixation" requirement, *i.e.,* to define the material objects in which copyrightable and infringing works mày be embedded and to describe the requisite fixed nature of that work within the material object. *See* 1 William F. Patry, *Copyright Law and Practice* 168 (1994) ("The two essential criteria of statutory copyright are originality and fixation."); *id.* at 174 (noting that the definition of "copies" is "intended to 'comprise all the material objects in which copyrightable objects are capable of being fixed' "). Under § 101's definition of "copies," a work satisfies the fixation requirement when it is fixed in a material object from which it can be perceived or communicated directly or with the aid of a machine.[17]

This definition was intended to avoid the distinctions "derived from cases such as

---

17. The wording of the definition is set forth in the previous paragraph of text. 17 U.S.C. § 101. The dissent argues that the first "work" in this passage references the allegedly infringing work, while the second "work" refers to the original work. Dissent at page 710. Our interpretation of the statute flows from a plain reading, under which the same meaning is attached to each reference to a "work"; there is no indication in the statute that the second "work" is intended to refer to the original work of authorship, as opposed to simply the work that is fixed in the material object.

*White–Smith Publishing Co. v. Apollo Co.,* 209 U.S. 1[, 28 S.Ct. 319, 52 L.Ed. 655] (1908), under which statutory copyrightability in certain cases [had] been made to depend upon the form or medium in which the work is fixed." H.R.Rep. No. 94–1476, at 52 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5665; *see also* S.Rep. No. 94–473, at 51 (1975).[18] In *White–Smith,* the Supreme Court held that a piano roll did not infringe the copyrighted music it played because its perforations were unintelligible to the eye and therefore did not amount to a "copy" of the music (which the Court defined as " 'a written or printed record of [the musical composition] in intelligible notation' "). *See White–Smith Publ'g Co.,* 209 U.S. at 17, 28 S.Ct. at 323. There was no question in that case that the work embodied in the piano roll reproduced the original work of authorship, *i.e.,* the piece of music; the only question was whether this reproduction met the "fixation" requirement. Thus, the definition of "copies" is intended to expand the "fixation" requirement to include material objects that embody works capable of being perceived with the aid of a machine, thereby ensuring that reproductions of copyrighted works contained on media such as floppy disks, hard drives, and magnetic tapes would meet the Copyright Act's "fixation" requirement.

That definition—intended to clarify that a work stored on a disk or tape can be a copy of the copyrighted work even if it cannot be perceived by human senses without technological aid—means that CD–ROM discs can infringe a copyright even if the information embedded upon them is not perceptible without the aid of a CD–ROM player. In this case, however, the only fixed arrangement is the (non-West) sequence that is embedded on plaintiffs' CD–ROM discs and that appears with the aid of a machine without manipulation of the data.

To recapitulate a bit, West relies on the definition of "copies" to argue that plaintiffs' CD–ROM discs duplicate its copyrighted arrangement of cases because star pagination permits a user to "perceive" the copyrighted element "with the aid of" a computer and the FOLIO retrieval system, *i.e.,* by manipulating the data embedded on a CD–ROM disc to retrieve the cases in the order in which they appear in the West case reporters. West's definition of a copy, as applied to a CD–ROM disc, would expand the embedded work to include all arrangements and *re* arrangements that could be made by a third-party user who manipulates the data on his or her own initiative. But the relevant statutory wording refers to material objects in which "a work" readable by technology "is fixed," not to another work or works that can be created, unbidden, by using technology to alter the fixed embedding of the work, by rearrangement or otherwise. The natural reading of the statute is that the arrangement of the work is the one that can be perceived by a machine without an uninvited manipulation of the data.

West cites no case which supports its interpretation of § 101's definition of "copies," [19] and every case we have found has

---

18. In explaining the fixation requirement, the House Report states in full:

As a basic condition of copyright protection, the bill perpetuates the existing requirement that a work be fixed in a "tangible medium of expression," and adds that this medium may be one "now known or later developed," and that the fixation is sufficient if the work "can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." This broad language is intended to avoid the artificial and largely unjustifiable distinctions, derived from cases such as *White–Smith Publishing Co. v. Apollo Co.,* 209 U.S. 1, 28 S.Ct. 319, 52 L.Ed. 655 (1908), under which statutory copyrightability in certain cases has been made to depend upon the form or medium in which the work is fixed. Under the bill it makes no difference what the

form, manner, or medium of fixation may be—whether it is in words, numbers, notes, sounds, pictures, or any other graphic or symbolic indicia, whether embodied in a physical object in written, printed, photographic, sculptural, punched, magnetic, or any other stable form, and whether it is capable of perception directly or by means of any machine or device "now known or later developed." H.R.Rep. No. 94–1476, at 52, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5665 (footnote omitted).

19. West relies on *Tasini v. New York Times Co.,* 972 F.Supp. 804 (S.D.N.Y.1997) (Sotomayor, J.); but that case is completely consistent with our interpretation of § 101's definition of "copies." At issue in *Tasini* was a collective work author's right to produce several electronic databases containing the collective work under § 201(c)'s

relied upon the definition solely to ascertain whether a work has met the fixation requirement, not to determine the arrangements and rearrangements of the work fixed on the material object. *See, e.g., Stenograph L.L.C. v. Bossard Assocs., Inc.,* 144 F.3d 96, 100 (D.C.Cir.1998) (citing § 101's definition of "copies" to "support the proposition that the installation of software onto a computer results in 'copying' within the meaning of the Copyright Act"); *Stern Elecs., Inc. v. Kaufman,* 669 F.2d 852, 856 (2d Cir.1982) (using § 101's definition of "copies" to determine whether an audiovisual work met the "fixation" requirement); *Sega Enters. Ltd. v. Accolade, Inc.,* 785 F.Supp. 1392, 1396 (N.D.Cal.) (using § 101 to determine whether an intermediate copy was actionable and noting substantial similarity between intermediate copy and allegedly infringed work as the test for determining whether intermediate copy was reproduction of copyrighted work), *aff'd in part and rev'd in part,* 977 F.2d 1510 (9th Cir.1992).

### 2. Substantial Similarity

The question presented—whether an element of West's copyrighted work has been reproduced in a "copy"—is answered by comparing the original and the allegedly infringing works, and inquiring whether the copyrightable elements are substantially similar. Under the facts of this case, the arrangement of the "work" on plaintiffs' CD–ROM discs is the arrangement of cases that is displayed by a CD player reading the information in the order in which it is physically embedded or "fixed" in the discs and not all possible arrangements that can be perceived through the manipulation and rearrangement of the embedded data by a third party user with a machine.

 The Supreme Court in *Feist* emphasized that copyright protection for a factual compilation is "thin," and that a compilation containing the same facts or non-copyrightable elements will not infringe unless it *"feature[s]* the same selection and arrangement" as the original compilation. *Feist,* 499 U.S. at 349, 111 S.Ct. at 1289 (emphasis added); *see also Key Publications, Inc. v. Chinatown Today Publ'g Enters., Inc.,* 945 F.2d 509, 514 (2d Cir.1991) (holding that to establish infringement, a compilation copyright holder must demonstrate "substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed compilation"). To determine whether two works contain a substantially similar arrangement, courts compare the ordering of material in the two works, finding infringement only when both compilations have featured a very similar literal ordering or format. *See, e.g., Lipton v. Nature Co.,* 71 F.3d 464, 472 (2d Cir.1995) (finding infringement of arrangement when of 25 terms contained in copyrighted work, 21 are listed in same order on allegedly infringing work); *Worth v. Selchow & Righter Co.,* 827 F.2d 569, 573 (9th Cir.1987) (holding that alphabetical arrangement of factual entries in a trivia encyclopedia was not copied by a copyrighted game that organized the factual entries by subject matter and random arrangement on game cards); *see also* Jane C. Ginsburg, *No "Sweat"? Copyright and Other Protection of Works of Information After Feist v. Rural Telephone,*

---

"revision" right for collective works. The contributors to the collective works argued, *inter alia,* that § 201(c) did not contemplate that a computer database of the collective work could amount to a revision, arguing that because § 201(c) did not confer the right to display the copyrighted work publicly, the work could not be reproduced on a computer because "a work cannot be reproduced electronically unless it is 'displayed' on a computer screen." *Id.* at 816. However, the court rejected this argument, noting that the reproduction right, which *is* granted under § 201(c), and "which necessarily encompasses the right to create copies of that work, presupposes that such copies might be 'perceived' from a computer terminal." *Id.*

This statement merely affirmed that a reproduction of an original work may be found on a material object that allows the work to be perceived on a computer terminal. But it does not explain the arrangement of the "work" fixed on that copy and whether a particular copy is a reproduction of the original work. Nor did *Tasini* read § 101's definition of "copies" to mean that the data was arranged in any way that could be perceived by a third party with the aid of a sorting device. In fact, when the court did consider whether the work embedded on the CD–ROM was substantially similar to the original collective work, it did not refer to § 101's definition of "copies". *Id.* at 823–25.

92 Colum.L.Rev. 338, 349 (1992) (noting that under *Feist*, nothing "short of extensive verbatim copying" will amount to infringement of a compilation). "If the similarity concerns only noncopyrightable elements of [a copyright holder's] work, or no reasonable trier of fact could find the works substantially similar, summary judgment is appropriate." *Williams v. Crichton,* 84 F.3d 581, 587 (2d Cir.1996) (internal quotation marks and citations omitted). We agree with plaintiffs and *amicus* United States that West fails to demonstrate the requisite substantial similarity.[20] West's case reporters contain many fewer cases than plaintiffs' CD–ROM discs, and are arranged according to classification such as court, date, and genre (opinions, per curiam opinions, orders, etc.), subject to certain exceptions characterized by West as features of originality, whereas plaintiffs organize their cases simply by court and date. Comparison of the works reveals that cases that appear adjacent in the West case reporters are separated on plaintiffs' products by many other cases; and even if these other cases are disregarded, the West cases included on plaintiffs' products are not in an order at all resembling West's arrangement.[21]

Star pagination (in addition to revealing the page location of the text of judicial opinions) may incidentally reveal to the reader how *the reader* could create a copy of West's arrangement by various computer key operations; but by the same token, if the CD–ROM discs were published on paper in the same order as the cases are embedded in the CD–ROM disc, a reader so minded could assemble a "copy" of the West arrangement by use of scissors. *Cf. Horgan v. Macmillan, Inc.,* 789 F.2d 157, 162 (2d Cir.1986) (noting that "the standard for determining copyright infringement is not whether the original could be recreated from the allegedly infringing copy, but whether the latter is 'substantially similar' to the former").

True, CD–ROM technology is different from paper, for as West points out, the arrangement of judicial opinions in a CD–ROM disc does not correspond necessarily to how the information will be displayed or printed by the user, because the file-retrieval system allows users to retrieve cases in a variety of ways. *See* Robert C. Denicola, *Copyright in Collections of Facts: A Theory for the Protection of Nonfiction Literary Works,* 81 Colum.L.Rev. 516, 531 (1981) ("[I]t is often senseless to seek in [electronic databases] a specific, fixed arrangement of data."). But having rejected West's argument under § 101, we can conclude that the arrangement of plaintiffs' work is the sequence of cases as embedded on the plaintiffs' CD–ROM discs and as displayed to the user browsing through plaintiffs' products. That sequence is not substantially similar to West's case reporters. There is no evidence that Bender and HyperLaw's case-retrieval systems allow a user to browse the cases in the West

---

**20.** West does not claim that the appearance or layout of the cases on Bender's product reproduces the appearance or layout of West's case reporters. In fact, the layout is quite different; Bender displays its cases in one column with no page breaks, and with footnotes displayed at the end of the case or through a pop-up window that can be accessed by clicking the mouse-button on the footnote number.

**21.** As for Bender's product, there can be no substantial similarity in arrangement to the *Federal Reporter, Federal Supplement* and *Federal Rules Decisions.* Those reporters contain case reports from many non-New York courts (Second Circuit cases account for approximately 8.4% of the cases reported in the *Federal Reporter,* and New York federal courts contribute approximately 16.3% of the cases reported in the *Federal Supplement* and *Federal Rules Decisions* ) while the Bender product contains only New York cases.

Even those cases that appear in both Bender's product and West's case reporters are organized differently. For example, a viewer who retrieves *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996 (2d Cir.1995), in Bender's product will find that the case preceding *Knitwaves* and the case following it are not published in the West case reporter, and that the Second Circuit case preceding it in the *Federal Reporter* volume, *Aetna Cas. & Sur. Co. v. United States,* 71 F.3d 475 (2d Cir.1995), is not nearby in the Bender product. Or to give another example, a viewer who retrieves *Delchi Carrier SpA v. Rotorex Corp.,* 71 F.3d 1024 (2d Cir.1995), on the Bender system will find *United States v. Muniz,* 71 F.3d 93 (2d Cir.1995), a case that begins 931 pages earlier in the West reporter, following it.

Nor is the arrangement of Bender's New York state court opinions similar to West's. West organizes them initially by court while Bender organizes them strictly by date.

arrangement without first taking steps to create that arrangement. Thus, an actionable copy of West's sequence of cases, *i.e.*, a work with a substantially similar arrangement fixed in a tangible medium (probably a print-out of the cases), could be created by a user of the CD–ROM discs, but only by using the file-retrieval program as electronic scissors. We cannot find that plaintiffs' products directly infringe West's copyright by inserting star pagination to West's case reporters.

### 3. Contributory Infringement

■ Notwithstanding the absence of substantial similarity, a database manufacturer may be liable as a contributory infringer (in certain circumstances) for creating a product that assists a user to infringe a copyright directly. West has hypothesized that users of Bender and HyperLaw's products, using star pagination and the search functions of the CD–ROM products, will retrieve and print cases in the order in which they appear in West's case reporters. *See* Affidavit of Michael A. Trittipo ¶ 5, Joint Appendix at 1287. A CD–ROM disc user who replicated the West compilation in that way would be an infringer. But West has failed to identify any primary infringer, other than Mr. Trittipo, West's counsel. *See Cable/Home Communication Corp. v. Network Prods., Inc.,* 902 F.2d 829, 845 (11th Cir.1990) ("Contributory infringement necessarily must follow a finding of direct or primary infringement."); 2 Paul Goldstein, *Copyright* § 6.0 (1996) ("For a defendant to be held contributorily or vicariously liable, a direct infringement must have occurred.").

■ Assuming there is a class of primary infringers, then a party "who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *See Gershwin Publ'g Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971). Two types of activities that lead to contributory liability are: (i) personal conduct that encourages or assists the infringement; and (ii) provision of machinery or goods that facilitate the infringement. *See*

*ITSI T.V. Prods., Inc. v. California Auth. of Racing Fairs,* 785 F.Supp. 854, 861 n. 13 (E.D.Cal.1992). West argues that Bender and HyperLaw's sale of their CD–ROM products falls within the second category.

■ However, as *amicus* United States notes, the provision of equipment does not amount to contributory infringement if the equipment is "capable of substantial noninfringing uses," including uses authorized under the fair use doctrine. *See Sony Corp. of Amer. v. Universal City Studios, Inc.,* 464 U.S. 417, 442, 104 S.Ct. 774, 788–89, 78 L.Ed.2d 574 (1984). In determining whether liability is foreclosed by substantial noninfringing uses, the Supreme Court in *Sony* emphasized that the alleged contributory infringer did not influence or encourage unlawful copying with the equipment it provided. *Id.* at 438, 104 S.Ct. at 787; *see also Cable/Home Communication Corp.,* 902 F.2d at 846.

■ The arrangement of cases in the West case reporters, however meticulous and thoughtful, is of small assistance to the primary use of these products—searching for cases, and retrieval. After all, the useful order of access is almost always determined by the research goal of each user rather than the publisher's sequencing (a compilation of law cases being not much like a musical medley or a sonnet sequence). And the primary use of West's pagination in plaintiffs' products is to allow the user to refer to the location of a particular text within the West case reporters as has become standard practice in the legal community. West concedes that use of its volume and page numbers for pinpoint citation purposes is at least a fair use (if it even amounts to actionable copying). There is no evidence that plaintiffs have encouraged the users of their products to reproduce West's arrangement. In fact, the CD–ROM products provide no easy means for using the star pagination to create a substantially similar arrangement; a user must retrieve each case, one at a time, in the order in which they appear in the West volume, and then print each one. What customer would want to perform this thankless toil? We conclude that plaintiffs' products have substantial, if not overwhelming, nonin-

fringing uses, and that the plaintiffs are not liable as contributory infringers.[22]

West distinguishes *Sony* on the ground that that case involved a neutral "staple article of commerce" (a video tape recorder) which "is sold without reference, connection, or linkage to any copyrighted work," while plaintiffs' CD–ROM discs "contain ... exact copies of West's proprietary arrangements permanently embedded within its database." This argument bespeaks direct infringement (a claim we have already rejected for other reasons) rather than contributory infringement. In any event, we think the "substantial noninfringing use" test is as applicable here as it was in *Sony*. The Supreme Court applied that test to prevent copyright holders from leveraging the copyrights in their original work to control distribution of (and obtain royalties from) products that might be used incidentally for infringement, but that had substantial noninfringing uses. *See Sony*, 464 U.S. at 440–42, 104 S.Ct. at 788–89; *see also* 2 Goldstein, *supra* § 6.1.2 ("To hold that the distribution of such materials or equipment constitutes contributory infringement, and thus to bring them within the scope of the copyright owner's control, may enable the copyright owner to influence the price and availability of goods that are not directly connected to its copyrighted work."). The same rationale applies here: West has a thin copyright in its compilations, which it seeks to leverage to protect its pagination (an element of its compilation that is unprotected altogether) and thereby to foreclose (or draw royalties from) CD–ROM products that might be used incidentally to replicate West's arrangement of cases, but that have substantial, predominant and noninfringing uses as tools for research and citation.[23]

### C

We differ with the Eighth Circuit's opinion in *West Publishing Co. v. Mead Data Central, Inc.*, 799 F.2d 1219 (8th Cir.1986). In that case, LEXIS (an on-line database provider) announced plans to star paginate its on-line version of cases to West case reporters. West claimed that the star pagination would allow users to page through cases as if they were reading West volumes, and in that way copied West's arrangement of cases. *Id.* at 1222. The court held that "West's arrangement is a copyrightable aspect of its compilation of cases, that the pagination of West's volumes reflects and expresses West's arrangement, and that MDC's intended use of West's page numbers infringes West's copyright in the arrangement." *Id.* at 1223. Even if it was not "possible to use LEXIS to page through cases as they are arranged in West volumes," the court said that insertion of comprehensive star pagination amounted to infringement:

> Jump cites to West volumes within a case on LEXIS are infringing because they enable LEXIS users to discern the precise location in West's arrangement of the portion of the opinion being viewed....

> With [LEXIS's] star pagination, consumers would no longer need to purchase West's reporters to get every aspect of West's arrangement. Since knowledge of the location of opinions and parts of opinions within West's arrangement is a large part of the reason one would purchase West's volumes, the LEXIS star pagination feature would adversely affect West's market position. "[A] use that supplants any part of the normal market for a copyrighted work would ordinarily be considered an infringement." S.Rep. No. 473, 94th Cong., 1st Sess. 65 (1975)....

---

**22.** In addition to the reasons discussed above, plaintiffs cannot be subject to liability for vicarious infringement because they cannot control the conduct of the direct infringer. *See Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir.1963) (holding that vicarious infringement requires that defendant possess the right and ability to supervise the infringing conduct).

**23.** Even if the "substantial noninfringing use" test does not apply beyond the context of staple articles of commerce, it is hard to say that plaintiffs, with knowledge of the infringing activity, "materially contribute[d]" to the direct infringement of West's copyright, *see Gershwin Publ'g Corp.*, 443 F.2d at 1162, because no showing of knowledge has been made, the infringement itself (if done) would have been pointless, and the predominant uses of plaintiffs' products are noninfringing.

*Id.* at 1227–28; *see also Oasis Publ'g Co. v. West Publ'g Co.*, 924 F.Supp. 918, 922–25 (D.Minn.1996) (holding that (i) *West Publishing Co.* had not been overruled by *Feist*'s disavowal of the "sweat of the brow" doctrine, and (ii) that even if it had, "the internal pagination of [West's reporter] is part of West's overall arrangement, and similarly protected").

The Eighth Circuit in *West Publishing Co.* adduces no authority for protecting pagination as a "reflection" of arrangement, and does not explain how the insertion of star pagination creates a "copy" featuring an arrangement of cases substantially similar to West's—rather than a dissimilar arrangement that simply references the location of text in West's case reporters and incidentally simplifies the task of someone who wants to reproduce West's arrangement of cases. It is true that star pagination enables users to locate (as closely as is useful) a piece of text within the West volume. But this location does not result in any proximate way from West's original arrangement of cases (or any other exercise of original creation) and may be lawfully copied So any damage to the marketability of West's reporters resulting from such copying is not cognizable under the Copyright Act. It is interesting that the Eighth Circuit's quotation from the Senate Report on supplanting use is drawn from the Report's discussion of the fair use doctrine, which applies only when the copyright holder has first demonstrated infringement of a protectable element of its work.

At bottom, *West Publishing Co.* rests upon the now defunct "sweat of the brow" doctrine. That court found that LEXIS had infringed West's copyright simply because it supplanted much of the need for West's case reporters through wholesale appropriation of West's page numbers. In reaching this conclusion, the court (i) noted that LEXIS's appropriation would deprive West of a large part of what it "[had] spent so much labor and industry in compiling," *West Publ'g Co.*, 799 F.2d at 1227, and (ii) cited *Hutchinson Telephone v. Fronteer Directory Co.*, 770 F.2d 128 (8th Cir.1985), *see West Publ'g Co.*, 799 F.2d at 1228, which in turn relied on *Leon v. Pacific Telephone & Telegraph Co.*, 91 F.2d 484 (9th Cir.1937), and *Jeweler's*

*Circular Pub Co v. Keystone Pub Co*, 281 F. 83 (C.C.A.Cir.1922)—classic "sweat of the brow" cases that were overruled in *Feist.* Thus, the Eighth Circuit in *West Publishing Co.* erroneously protected West's industrious collection rather than its original creation. Because *Feist* undermines the reasoning of *West Publishing Co., see United States v. Thomson Corp.*, 949 F.Supp. 907, 926 (D.D.C. 1996), we decline to follow it.

## CONCLUSION

We hold that Bender and HyperLaw will not infringe West's copyright by inserting star pagination to West's case reporters in their CD-ROM disc version of judicial opinions. The judgement of the district court is affirmed.

SWEET, District Judge.

I respectfully dissent.

This appeal from the grant of summary judgment in favor of the appellee Bender presents challenging issues, the extent of copyright protection for compilations under the § 501(a) and § 106(1) and (3) of Title 17, U.S.C., what constitutes copying in the electronic age, and the propriety of summary judgment in determining issues of fair use. Because the majority reaches conclusions on the first two issues, with which I disagree, and consequently failed to address the third issue, I feel required to dissent, emboldened by the holdings of the three other courts which have considered the issue, *West Pub. Co. v. Mead Data Central, Inc.*, 616 F.Supp. 1571 (D.Minn.1985), *aff'd*, 799 F.2d 1219 (8th Cir.1986), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987); *Oasis Pub. Co. v. West Pub. Co.*, 924 F.Supp. 918 (D.Minn.1996), and reached conclusions contrary to those stated by the majority. By concluding that page numbers in the context of the West citation system are facts rather than an expression of originality the majority permits the appellee Bender and the intervenor Hyperlaw to appropriate the practical and commercial value of the West compilation.

The West page numbers which are inserted by appellee Bender in the text of each of

its CD–ROM disks [1] by star pagination result from the totality of the West compilation process which includes its concededly original and copyrightable work, *i.e.* attorney description, headnotes, method of citation and em-ending of parallel or alternate citations. These result in a compilation work with page numbers assigned mechanically. The West page numbers and the corresponding Bender and Hyperlaw star pagination are the keys which open the door to the entire West citation system which as the majority noted is an accepted, and in some instances, a required element for the citation of authorities.

The majority initially assumes the copyrightability of the West work but cites the statement in *Feist Publications, Inc., v. Rural Telephone Service Company, Inc.,* 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991), that "a factual compilation is eligible for copyright if it features an original selection or arrangement of the facts, but the copyright is limited to the particular selection or arrangement. In no event may copyright extend to the facts themselves." 499 U.S. 340 at 350–51, 111 S.Ct. 1282, 113 L.Ed.2d 358, and its conclusion that the compiler's copyright is "thin" permitting a subsequent compiler to use facts "so long as the competing work does not feature the same selection and arrangement." *Id.* By characterizing star pagination as a fact, rather than as an essential part of the selection or arrangement the majority deprives the West pagination of its originality and consequent copyright protection.

The majority concludes that because the volume and page numbers are "unprotected features" of West's compilation process, they may be copied without infringing West's copyright. The majority reasons that, pursuant to the Copyright Act, the "embedding of the copyrightable work in a tangible medium does not mean that the features of the tangi-ble medium are also copyrightable." Therefore, West's arrangement of cases is protectible, but the page numbers are not. The classification of page numbers as physical embodiment rather than the result of originality is the foundation stone of the majority's interpretation of the authorities dealing with the copyright statute.

In my view West's case arrangements, an essential part of which is page citations, are original works of authorship entitled to copyright protection. Comprehensive documentation of West's selection and arrangement of judicial opinions infringes the copyright in that work.

This reasoning is consistent with *Feist.* As discussed above, the majority notes that the compiler's copyright is "thin." *Feist,* 499 U.S. 340 at 350–51, 111 S.Ct. 1282, 113 L.Ed.2d 358. Therefore, "a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, *so long as the competing work does not feature the same selection and arrangement.*" *Id.* at 349, 111 S.Ct. 1282, (emphasis added). In this case, allowing plaintiffs to use the page numbers contained in West's publication enables them to feature West's same selection and arrangement.[2] Indeed, were it not for the ability to reproduce West's arrangement, its pagination would be of limited (if any) use.

According to *Feist,* "[t]he originality requirement articulated in the The Trade–Mark Cases and Burrow–Giles remains the touchstone of copyright protection today.... It is this bedrock principle of copyright that mandates the law's seemingly disparate treatment of facts and factual compilations." 499 U.S. 340 at 347, 111 S.Ct. 1282, 113 L.Ed.2d 358 (citations omitted).

It is also irrelevant that plaintiffs' products may contain material beyond West's selection and arrangement. Infringement is determined by how much of the copyright owner's work was taken, not by what else the copier's work contains. *See e.g., Warner Bros., Inc. v. American Broadcasting Cos., Inc.,* 720 F.2d 231, 241 (2d Cir.1983).

---

1. Bender's CD–ROMs obtain the text of the opinions they report from Lexis, opinions which are, of course, in the public domain.

2. It is immaterial that plaintiffs' products may display other arrangements as well as West's. The capability of a CD–ROM to display more than one arrangement does not make the encoding of an original selection and arrangement such as West's any less of an infringement.

Here the pagination results from West's arrangements, selections, syllabi, headnotes, key numbering, citations and descriptions. The page number, arbitrarily determined, is the sole result of the West system, appears nowhere else, and is essential to its coordinated method of citation. It is, so to speak, an original fact resulting from West's creativity.

Having determined that the West page numbers are not original, but factual, the majority then deals with West's contention that by use of the CD–ROM technology plaintiffs have violated § 101's prohibition against copying its selection and arrangement and defeats this contention by noting that West has conceded fair use of parallel citation as to the first page of a report. It rejects Chief Judge Magnuson's view: "Having gotten the inch under the conceded fair use of parallel citation to the first page of each case," plaintiffs are not "thereby entitled to take the entire mile in star citation to every page …" *Oasis Publishing Company, Inc. v. West Publishing Company*, 924 F.Supp. 918, 926 (D.Minn.1996).

The comprehensive copying of first-page parallel citations alone, even in a competing work, is arguably fair use because citations do not substantially supplant the need for the West volumes. Conversely, complete electronic cross-pagination fulfills the same market demand as West's volumes. As the *Oasis* Court explained, "Although with either the parallel cites or an internal cite from each case a user could sort West's cases and determine West's arrangement, the former does not utterly supplant the need for West's product while the latter does." *Id.* The view of the *Oasis* court correctly assesses the reality in my view.

According to the majority, a more fundamental reason to reject West's argument that plaintiffs have copied its arrangement is that the arrangement can be perceived only after a person uses the machine to rearrange the material.

Some of the most seminal developments in copyright law have been driven by technological change. There was a time when people questioned whether photographs, *see Burrow–Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 4 S.Ct. 279, 28 L.Ed. 349 (1884), or advertisements, *see Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903), were copyrightable. Here again it is necessary to reconcile technology with pre-electronic principles of law. Clearly, plaintiffs' CD–ROM disks are not "copies" in the traditional sense. Yet, plaintiffs provide the ability for a user to push a button or two and obtain West's exact selection and arrangement. This technological capacity presents a new question. The majority's answer threatens to eviscerate copyright protection for compilations.

West's position is that plaintiffs directly infringe. "[T]he owner of a copyright … has the exclusive rights to … reproduce the copyrighted work in copies." 17 U.S.C. § 106. The reproduction must be in a "material object … in which a work is fixed … from which the work can be perceived … either directly or with the aid of a machine or device." 17 U.S.C. § 101 (definition of "Copies"). Closely read, the word "work" in the statutory text refers in the first instance to the infringing work, and in the second instance to the infringed work. Accordingly, plaintiffs' CD–ROMs infringe West's reproduction right if the information is "fixed" in the CD–ROM (which it is) and if West's protected selection and arrangement "can be perceived … with the aid of a machine."

Broadly read, plaintiffs' inclusion in their work of West's precise page break information permits the Reporters to be "perceived" by the aid of a computer. Plaintiffs' inclusion of the selection and arrangement software feature make the perception easy. Even if the focus is placed upon the intervening deliberate act by the Bender or Hyperlaw CD–ROM user, liability might attach for contributory infringement, which requires (1) actual knowledge of direct infringement, (2) the ability to police the infringing conduct and (3) derivation of substantial benefit from the actions of the primary infringers. *See Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1163 (2d Cir.1971).

Finally, the majority dismisses *West Publishing Co.* on which I rely for lack of author-

ity. By its *ipse dixit*, that location by star pagination does not result from the concededly original West arrangement of cases, the majority rejects the result obtained by the Eighth Circuit and attributes it to the pre*Feist*, "now defunct 'sweat of the brow' doctrine," an attribution not warranted by the reliance of the Eighth Circuit upon West's originality. The question of whether or not *Feist* overruled *West* was argued and carefully considered by the *Oasis* court. Creativity was the issue, and I subscribe to Chief Judge Magnuson's view of the interrelationship between *West* and *Feist*.

While the Eighth Circuit did take note of the considerable "labor" exercised by West, it did so in conjunction with a consideration of West's "talent and judgment" in organizing its compilations. *See West Publishing Co.*, 799 F.2d at 1226 (concluding that West's arrangement is the result of "considerable labor, talent and judgment").

The Eighth Circuit applied essentially the same creativity standard articulated and applied in *Feist*. Instead of a mere "sweat of the brow" analysis of West's selection and arrangement of cases in the National Reporter System, the Court considered the "originality and intellectual creation" requirements of the arrangement. *West Publishing Co.*, 799 F.2d at 1225–26.

In *West Publishing Co.*, the Eighth Circuit's persuasively reasoned that (i) comprehensive pagination, when linked to the text of a compilation, is copyrightable in terms of originality because it expresses the compiler's expression and arrangement, and (ii) a compilation's selection and arrangement is copied when comprehensive cross-pagination is inserted into an electronic database containing the compilation's text. 799 F.2d at 1227–28.

Because of the views set forth above, I believe the District Court erred in not granting copyright protection to West. In addition, the District Court granted summary judgment for plaintiffs on their contention that their acts were permitted as "fair use." The resolution of this issue, factually contested, required a trial and the reversal of the grant of summary judgment. *See, e.g., Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70 (2d Cir.1997); *see also Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir.1991) (stating that while the copyright holder is not protected from summary disposition of claims where there are no material factual disputes, the "the fact driven nature of the fair use determination suggests that a district court should be cautious in granting Rule 56 motions in this area").

For these reasons I believe the grant of summary judgment granting the declaratory judgment requested by Bender was error, and I therefore dissent from the majority's affirmance of that judgment.